# United States Court of Appeals for the Federal Circuit

---

**PDS CONSULTANTS, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES, WINSTON-SALEM INDUSTRIES FOR THE BLIND**
*Defendants-Appellants*

---

2017-2379, 2017-2512

---

Appeals from the United States Court of Federal Claims in No. 1:16-cv-01063-NBF, Senior Judge Nancy B. Firestone.

---

Decided: October 17, 2018

---

DAVID S. GALLACHER, Sheppard Mullin Richter & Hampton LLP, Washington, DC, argued for plaintiff-appellee. Also represented by EMILY SUSAN THERIAULT.

CORINNE ANNE NIOSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant United States. Also represented by ROBERT EDWARD KIRSCHMAN, JR., DOUGLAS K. MICKLE, CHAD A. READLER.

JOANNE L. ZIMOLZAK, LeClairRyan, Washington, DC,

argued for defendant-appellant Winston-Salem Industries For The Blind. Also represented by JAMES K. KEARNEY, GARY H. NUNES, JOSHUA L. RODMAN, Womble Bond Dickinson (US) LLP, Tysons Corner, VA; JESSICA C. ABRAHAMS, Drinker Biddle & Reath LLP, Washington, DC.

TRACYE WINFREY HOWARD, Wiley Rein LLP, Washington, DC, for amicus curiae National Industries For The Blind. Also represented by STEPHEN JOSEPH OBERMEIER.

THOMAS SAUNDERS, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, for amici curiae Kingdomware Technologies, Inc., National Veteran Small Business Coalition, American Legion. Also represented by EDWARD HENDERSON WILLIAMS, II.

CRAIG HOLMAN, Arnold & Porter Kaye Scholer LLP, Washington, DC, for amicus curiae SourceAmerica. Also represented by NATHANIEL EDWARD CASTELLANO.

DAVID R. JOHNSON, Vinson & Elkins LLP, Washington, DC, for amicus curiae Goodwill Industries International, Inc.

DANA B. PASHKOFF, Drinker Biddle & Reath LLP, Washington, DC, for amicus curiae National Association for the Employment of People Who Are Blind.

RAECHEL KEAY KUMMER, Morgan, Lewis & Bockius LLP, Washington, DC, for amici curiae Melwood Horticultural Training Center, Inc., Melwood Veterans Services, LLC, Linden Resources, Inc.

———————————

Before PROST, *Chief Judge*, O'MALLEY and STOLL, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

This case concerns the relationship between two statutory regimes designed to benefit two historically disadvantaged groups: veterans and disabled persons. The United States and Winston-Salem Industries for the Blind ("Industries for the Blind") (together, "Appellants") appeal from a decision of the U.S. Court of Federal Claims ("Claims Court") holding that section 502 of the Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109-461, 120 Stat. 3403, 3431–35 (2006) ("VBA"), requires the Department of Veterans Affairs ("VA") to consider awarding contracts for prescription eyewear based on competition restricted to veteran-owned small business—i.e., to undertake a "Rule of Two" analysis—before procuring such eyewear from any other source, including a nonprofit agency for the blind or significantly disabled, designated as such under the Javits-Wagner-O'Day Act ("JWOD"), 41 U.S.C. § 8504. *See PDS Consultants, Inc. v. United States*, 132 Fed. Cl. 117 (2017). For the reasons that follow, we affirm.

## I. BACKGROUND

### A. Overview of the Federal Procurement Process

A bevy of statutes and regulations govern the federal procurement process. As explained below, these authorities impose a number of restrictions on executive branch agencies seeking to procure goods and services. At the same time, they permit—or, sometimes, mandate—that preferential treatment be given to certain contractors, including those that are owned by or employ veterans or employ blind or otherwise significantly disabled individuals. This case concerns the relative priority of those mandates for VA procurements.

### 1. The Competition in Contracting Act

In 1984, Congress enacted the modern statutory framework for federal procurement, the Competition in

Contracting Act of 1984, Pub. L. No. 98-369, div. B, tit. VII, 98 Stat. 494, 1175, which is codified, as amended, in various sections of titles 10, 31, and 41 of the United States Code. The Competition in Contracting Act generally requires that all executive agencies "obtain full and open competition through the use of competitive procedures" when procuring goods or services. 41 U.S.C. § 3301(a). An agency uses "competitive procedures" when it permits any responsible source to compete for a procurement; it also uses "competitive procedures" when it appropriately restricts competition to "small business concerns." *Id.* § 152.

The Competition in Contracting Act expressly exempts agencies from having to use "competitive procedures" for procurements where (1) procurement procedures are "otherwise expressly authorized by statute," *id.* § 3301(a); or (2) "a statute expressly authorizes or requires that the procurement be made through another executive agency or from a specified source," *id.* § 3304(a)(5). The parties do not dispute that the JWOD is a statute that expressly requires that certain procurements be made "from a specified source." They dispute, however, whether and to what extent the VBA contains a separate exception from the Competition in Contracting Act's "competitive procedures" requirement, one that applies before resort to the requirements of the JWOD.

### 2. The Javits-Wagner-O'Day Act

The JWOD was enacted in 1938 to provide employment opportunities for the blind, and was amended in 1971 to provide such opportunities for "other severely disabled" individuals. To effectuate these goals, the JWOD established the Committee for Purchase from People Who Are Blind or Severely Disabled ("AbilityOne"), a fifteen-member body appointed by the President that includes one representative from the VA. 41 U.S.C. § 8502.

One of AbilityOne's primary duties is to create and maintain a procurement list ("List") that identifies products and services produced by nonprofit entities that are operated in the interest of, and employ, individuals who are blind or significantly disabled. *Id.* § 8503(a). The JWOD generally requires that federal agencies, which on its face would include but not be limited to the VA, purchase products and services on the List from designated nonprofits. Specifically, the JWOD provides that:

An entity of the Federal Government intending to procure a product or service on the procurement list referred to in section 8503 of this title [i.e., the List] *shall procure the product or service from a qualified nonprofit agency* for the blind or a qualified nonprofit agency for other severely disabled in accordance with regulations of [AbilityOne] and at the price [AbilityOne] establishes if the product or service is available within the period required by the entity.

*Id.* § 8504(a) (emphasis added). Regulations promulgated under the JWOD mandate that AbilityOne, in deciding what items to place on the List, consider, among other things, the additional service or commodity's potential to generate employment, the nonprofit agency's qualifications and capability to meet Government standards and schedules, and the impact on private contractors. 41 C.F.R. § 51–2.4. AbilityOne can make changes to the List by posting a notice in the Federal Register and following the notice and comment procedures set forth in the Administrative Procedure Act. 41 U.S.C. § 8503(a)(2).

### 3. The Small Business Act and Amendments Thereto

The Competition in Contracting Act permits agencies to restrict competition for some federal contracts. For example, the Small Business Act ("SBA") "requires many federal agencies, including the [VA], to set aside contracts

to be awarded to small businesses," and specifically requires that each agency set "'an annual goal that presents, for that agency, the maximum practicable opportunity' for contracting with small businesses, including those 'small business concerns owned and controlled by service-disabled veterans.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1973 (2016) (quoting 15 U.S.C. § 644(g)(1)(B)). Federal regulations, such as 48 C.F.R. § 19.502-2(b), moreover, "set forth procedures for most agencies to 'set aside' contracts for small businesses." *Id.*

Congress, through the SBA, established a goal for all agencies to obtain 23% of the value of contracts from "small business concerns." 15 U.S.C. § 644(g)(1)(A) (2012). Congress then expanded small-business opportunities for veterans by passing section 502 of the Veterans Entrepreneurship and Small Business Development Act of 1999, Pub. L. No. 106-50, 113 Stat. 233, which amended the SBA and established a government-wide contracting goal for agencies to obtain at least 3% of the value of contracts from service-disabled veteran-owned small businesses. *Id.*

Congress further amended the SBA by passing the Veterans Benefits Act of 2003, Pub. L. No. 108-183, 117 Stat. 2651. Section 308 of the 2003 Act, as codified, provides that contracting officers "may award contracts on the basis of competition restricted to small business concerns owned and controlled by service-disabled veterans," provided "the contracting officer has a reasonable expectation that not less than 2 small business concerns owned and controlled by service-disabled veterans will submit offers and that the award can be made at a fair market price." 15 U.S.C. § 657f(b). It also provides, however, that such a procurement may not be made from a source on this basis "if the procurement would otherwise be made from a different source under section 4124 or

4125 of title 18 or chapter 85 of title 41," the latter including the JWOD.  *Id.* § 657f(c).[1]

### 4.  The VBA and the VA's Regulations and Guidance

Congress enacted the VBA in 2006, seeking to remedy federal agencies' failures to meet these contracting goals.[2] In section 502 of the VBA, Congress required the Secretary of Veterans Affairs to establish specific annual goals for the VA's own contract awards to veteran-owned small business and to service-disabled veteran-owned small businesses.  *See* 38 U.S.C. § 8127(a).  Congress also created a preference for awarding contracts restricted to veteran-owned small business, known as the "Rule of Two," which provides:

> (d) USE OF RESTRICTED COMPETITION.— Except as provided in subsections (b) and (c), for purposes of meeting the goals under subsection (a), and in accordance with this section, a contracting officer of the [VA] shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

*Id.* § 8127(d).  Subsections (b) and (c) give contracting officers discretion to award contracts below certain dollar

---

[1]   Sections 4124 and 4125 govern federal procurements of prison-made products and prisoner-conducted public services, respectively.

[2]   The VBA is codified, in relevant part, at 38 U.S.C. §§ 8127–8128 (2016).

thresholds to veteran-owned small businesses without using competitive procedures (very small contracts) or on a sole-source basis (slightly larger contracts). *Id.* §§ 8127(b) & (c). Unlike the 2003 Act, the VBA contains no express exception for procurements which would "otherwise be made from a different source under section 4124 or 4125 of title 18 or chapter 85 of title 41."

In response to the VBA, the VA established the "Veterans First Contracting Program" on June 20, 2007. Under the program, contracting officers were directed to give service-disabled veteran-owned small businesses and veteran-owned small businesses first and second priority status when awarding contracts for VA procurements by undertaking the Rule of Two analysis set forth in § 8127(d). After a period for notice and comment, the VA published its final rules implementing this program with an effective date of January 7, 2010. *See VA Acquisition Regulation: Supporting Veteran-Owned and Service-Disabled Veteran-Owned Small Businesses*, 74 Fed. Reg. 64,619 (Dec. 8, 2009). Notably, though the regulations do not say so, in response to comments regarding the interaction between the new program and the AbilityOne program, the VA indicated that the rule would "not alter AbilityOne's status in the ordering preference for current or future items on the AbilityOne procurement list." *Id.* at 64,622.

### 5. The FAR and VAAR

The Federal Acquisition Regulation ("FAR") is a set of uniform policies and procedures for government acquisition of supplies and services, codified at 48 C.F.R. Part 19, that implements, among other statutes, the Competition in Contracting Act, the JWOD, and the SBA. Prior to the promulgation of FAR, the General Services Administration issued regulations that provided guidance to agencies as to how they should prioritize the myriad policies that affect government procurement. *See Procurement Sources*

*and Programs; Priorities for Use of Supply Sources*, 44 Fed. Reg. 47,934, 47,935 (Aug. 16, 1979). In Part 8, FAR adopted a prioritization schedule providing that, subject to certain exceptions, "agencies shall satisfy requirements for supplies and services from or through the mandatory Government sources and publications" according to a "descending order of priority." 48 C.F.R. § 8.002(a) (2002). This regulation explains that procurement of "[s]upplies which are on the [AbilityOne List]" takes priority over the procurement of supplies listed in Federal Supply Schedules or government acquisition contracts. *Id.*; *id.* § 8.004; *see generally Federal Acquisition Regulation*; *Prioritizing Sources of Supplies and Services for Use by the Government*, 77 Fed. Reg. 54,872 (Sept. 6, 2012) (explaining the reorganization of FAR).

The VA's Acquisition Regulation ("VAAR") is a subset of the FAR that governs, among other things, VA acquisition procedures. One such VAAR, 48 C.F.R. § 808.002, contains a priority order for supplies. The 2009 regulations referenced above are part of the VAAR.

### 6. The 2010 Letter and *Angelica Textile*

On April 28, 2010, the VA issued a letter setting forth guidelines to its contracting staff about the Veterans First Program and addressed its interaction with the AbilityOne program. The stated purpose of the letter was to "set forth new procedures for gaining approval to request new requirements be placed on the AbilityOne Procurement List," and it directed contracting officers to take a series of steps to explore whether veteran-owned small businesses and service-disabled veteran-owned small businesses could provide the needed services before proposing a requirement for the List. J.A. 969–71. Among the new steps, a contracting officer must (1) perform market research in accordance with Part 10 of the FAR and Part 810 of the VAAR, and (2) prepare a determination and findings which document the require-

ment, the results of the market research performed, and the contracting officer's findings.  The letter also stated that all contracting officers must "adhere to the authorities of [the VBA] prior to placing new requirements on the AbilityOne Procurement List," but it distinguished between items that were on the List as of January 7, 2010 and those that were not:

> [A]ll items *currently* on the AbilityOne Procurement List as of January 7, 2010, will continue to take priority over the contracting preferences mandated by [the VBA].  However, all *new requirements* will be subject to the contracting preferences mandated by [the VBA] prior to being considered for placement with the AbilityOne Program. . . .  To ensure appropriate business opportunities are properly afforded to [service-disabled veteran-owned small businesses] and [veteran-owned small businesses], all [contracting officers] must adhere to the authorities and requirements of [the VBA] (38 U.S.C. [§§] 8127–8128) prior to placing new requirements on the AbilityOne Procurement List.

J.A. 1338 (emphases added).  Thus, the letter indicated that items that had been added to the List prior to January 2010 would be grandfathered in and continue to receive priority.

About six months after the VA published its 2010 letter, the Claims Court issued its decision in *Angelica Textile Services, Inc. v. United States*, 95 Fed. Cl. 208 (2010), a bid-protest case concerning the relationship between the VBA and the JWOD.  The Claims Court ruled that a contracting officer "intentionally sidestepped required procedure" when she failed to follow the steps outlined in the 2010 letter for adding *new* services to the List.  *Angelica Textile*, 95 Fed. Cl. at 221.  The court required the VA and its contracting officers to follow the

procedures set forth in the 2010 letter in follow-on procurements. *Id.* at 223. The court did not address items on the list prior to January 2010.

Following the Claims Court's *Angelica Textile* decision, AbilityOne "ended cooperation and collaboration between the AbilityOne Program staff and VA contracting officers regarding [List] additions." *PDS Consultants*, 132 Fed. Cl. at 122. It then began to add items to the List unilaterally, taking the position that, because the VBA only applied to the VA, and not AbilityOne, it was not required to perform a Rule of Two analysis before adding items to the List. *Id.*

### 7. *Kingdomware*

In 2016, the Supreme Court decided *Kingdomware*, in which it held that, "[e]xcept when the [VA] uses the noncompetitive and sole-source contracting procedures in subsections (b) and (c), § 8127(d) requires the [VA] to use the Rule of Two before awarding a contract to another supplier." 136 S. Ct. at 1977. *Kingdomware* did not directly address the interaction between § 8127 and the JWOD, however. Its focus, instead, was on whether the VA had the discretion under § 8127(d) to place orders under a preexisting Federal Supply Schedule before resorting to the Rule of Two.

In response to the Supreme Court's decision, the VA issued a new policy memorandum, dated July 25, 2016, again seeking to reconcile the requirements of the VBA and the JWOD. The memorandum stated that the VA has a "continuing requirement to comply with all statutory mandates," including an obligation to purchase items on the List. J.A. 1301. The memorandum also included a decision tree, which explained that, if there is a mandatory source, such as an item on the List, then the Rule of Two "does not apply." J.A. 1336. Nevertheless, the memorandum explained that the VA will continue to require contracting officers to "conduct market research"

and "apply the VA Rule of Two" as required under the VBA before the officer can propose an addition to the List. J.A. 1313.

Then, on March 1, 2017, the VA sent a memorandum to the heads of contracting activities proposing to amend VAAR § 808.002 to "further define use of the . . . Rule of Two when considering procuring supplies or services on the AbilityOne Procurement List" and to require procurement officials to apply the Rule of Two before procuring an item on the List if that item was added to the List on or after January 7, 2010—the date on which the VA's revised regulations implementing the VBA became effective—if such an analysis was not performed before the item was added. J.A. 1549, 1551.[3]

With this background in mind, we next review the procedural history before determining which statute—the VBA or JWOD—controls when VA procurements are made.

## B. Procedural History

### 1. The VISNs and Associated Contracts

The items and services at issue in this case are eyewear and eyewear prescription services that the VA provides through two of its regional Veterans Integrated Service Networks ("VISNs") and associated facilities: VISNs 2 and 7.[4] Eyewear products and services for VISNs 2 and 7 were added to the List before January 7,

---

[3]    48 C.F.R. § 808.002 does not yet reflect the changes proposed by the VA in this memorandum.

[4]    VISNs 6 and 8 were also initially at issue, but the parties agreed at oral argument that they were no longer relevant. Oral Arg. at 9:16–9:37, 16:47–18:09, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl= 2017-2379.mp3.

2010—the date on which the revised regulations implementing the VBA became effective—while those for VISNs 6 and 8 were added to the List after January 7, 2010.[5]

Prior to the passage of the VBA, AbilityOne, working in coordination with the VA, added eyewear and eyewear prescription services provided by the Industries for the Blind to the List for VISNs 2 and 7. It added eyewear prescription services for VISN 7 in 2002 and added eyewear for VISN 2 in 2005. Once the products and services for these VISNs were added to the List, the VA entered into contracts with the Industries for the Blind "to produce and provide prescription eyeglasses and associated services to eligible veteran beneficiaries serviced by VA Medical Centers and all affiliated out-patient clinics," specifying that "eyeglasses will be made to the individual veteran's prescription." *PDS Consultants*, 132 Fed. Cl. at 121.

After the VA published its 2010 letter, coordination between VA contracting officers and AbilityOne effectively ended. Between 2013 and 2015, AbilityOne, over negative comments from certain service-disabled veteran-owned small businesses, added prescription eyewear requirements for portions of VISN 8 to the List, leading to a new contract with the Industries for the Blind. *Id.*

---

[5] The Industries for the Blind initially received contracts to provide products and services under VISN 7 in 2002 and under VISN 2 in 2005, and has continuously contracted for these VISNs since these initial contracts. The Industries for the Blind's VISN 2 contract was extended for five months on August 30, 2016, and then again under a sole-source contract that expired on September 30, 2017. Its VISN 7 contract was extended on July 15, 2016, and is set to expire on July 14, 2021. *PDS Consultants*, 132 Fed. Cl. at 124.

In February 2016, AbilityOne published a notice in the Federal Register proposing the addition of eyewear for all of the VA's requirements in VISN 6 to the List. *See Procurement List, Proposed Additions and Deletion*, 81 Fed. Reg. 7,510, 2016 WL 538665 (Feb. 12, 2016). Shortly after the issuance of *Kingdomware*, PDS Consultants, Inc. ("PDS Consultants"), which alleges that it can provide eyewear for VISN 6, wrote a letter to AbilityOne "stating that many of the eyewear products and services that AbilityOne had proposed adding to the List 'are the same or similar to the types of eyeglasses many veteran-owned and service-disabled veteran-owned businesses currently provide' to the VA." *PDS Consultants*, 132 Fed. Cl. at 123. PDS Consultants "asserted that adding VISN 6 to the List would cause the VA to violate § 8127 of the VBA, because *Kingdomware* found that the Rule of Two was mandatory and Congress intended it to cover 'all VA procurements, including items already on the AbilityOne Procurement List.'" *Id.* (emphasis omitted). On July 19, 2016, PDS Consultants wrote AbilityOne "another letter encouraging it to 'work with the VA to ensure that the [VA] performs the necessary market research to determine whether the Rule of Two can be satisfied for VISN 6' before adding that VISN to the List." *Id.*

On August 1, 2016, AbilityOne voted to add eyewear for VISN 6 to the List. In the notice published in the Federal Register, AbilityOne addressed PDS Consultants' comments, stating that, although it appreciated that it may be possible to purchase eyewear from veteran-owned small businesses:

> [T]he Commission's mission and duty is to provide employment opportunities for people who are blind or have significant disabilities, many of whom are veterans . . . . Adding the proposed products to the Commission's Procurement List will provide employment opportunities to a portion of the U.S. population that has a historically

> high rate of unemployment or underemployment, and is consistent with the Commission's authority established by 41 U.S.C. Chapter 85.

*Additions to and Deletions from the Procurement List*, 81 Fed. Reg. 51,863, 51,864–65, 2016 WL 4138446 (Aug. 5, 2016) (footnote omitted).

### 2. The Claims Court Proceedings

PDS Consultants initiated this bid protest in the Claims Court on August 25, 2016, alleging that it is a service-disabled veteran-owned small business "engaged in the business of providing vision related products" and seeking declaratory and injunctive relief. Specifically, it sought an injunction requiring the VA to perform the Rule of Two analysis for VISNs 2, 6, 7, and 8, and a separate injunction requiring AbilityOne to remove VISNs 6 and 8 from the List.

The Claims Court, after receiving briefing and holding a hearing, ruled that the VA is required to perform a Rule of Two analysis for *all* procurements that post-date 2006, when the VBA was passed, and not just for those items added to the List after January 7, 2010, when the regulations implementing the VBA became effective. *PDS Consultants*, 132 Fed. Cl. at 120. The court first determined that it had jurisdiction over PDS Consultants' complaint, disagreeing with the government's position that PDS Consultants was required to challenge additions to the List in federal district court under the Administrative Procedure Act. *Id.* at 126. Turning to the merits, the Claims Court reasoned that, even though the VBA and the JWOD are not necessarily in conflict in all instances, (1) the VA is required to follow one of the two statutes first when a product or service appears on the List, (2) the Supreme Court in *Kingdomware* held that § 8127(d) obligates the VA to use the Rule of Two "in all contracting before using competitive procedures," and (3) the VBA is "more specific" than the JWOD in that it applies only to

the VA for all of its procurements while the JWOD addresses agency procurements generally. *Id.* at 127–28 (quoting *Kingdomware*, 136 S. Ct. at 1977). The court concluded that the VA has a legal obligation under the VBA to perform a Rule of Two analysis when it seeks to procure eyewear for VISNs 2 and 7 that have not gone through such an analysis. *Id.* at 128. The Claims Court then enjoined the VA from entering into future contracts with the Industries for the Blind without first performing a Rule of Two analysis and entered judgment in favor of PDS Consultants.

The United States and the Industries for the Blind timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. Discussion

### A. Standard of Review

"In a given case, whether Tucker Act jurisdiction exists is a question of law that we review without deference to the decision of the trial court." *Metz v. United States*, 466 F.3d 991, 995 (Fed. Cir. 2006) (citation omitted). PDS Consultants, as the plaintiff below, "bears the burden of proving that" the Claims Court "possessed jurisdiction over his complaint." *Sanders v. United States*, 252 F.3d 1329, 1333 (Fed. Cir. 2001) (citing *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)).

We review the Claims Court's rulings on motions for judgment on the administrative record de novo and review its factual findings based on the administrative record for clear error. *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (citations omitted). In a bid protest case, we apply the standard of review set forth in the Administrative Procedure Act to determine whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (quoting 5 U.S.C. § 706(2)(A)).

We generally review an agency's statutory interpretations pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984); *Auer v. Robbins*, 519 U.S. 452 (1997); and *United States v. Mead Corp.*, 533 U.S. 218, 229–30 (2001). *Chevron* requires that a court reviewing an agency's construction of a statute that it administers first discern "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. If the answer is yes, the inquiry ends, and the reviewing court must give effect to Congress's unambiguous intent. *Id.* at 842–43. If the answer is no, the court must defer to the agency's construction of the statute as long as that construction is a reasonable one. *Id.* at 843. Notably, "we owe an agency's interpretation of the law no deference unless, after 'employing traditional tools of statutory construction,' we find ourselves unable to discern Congress's meaning." *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) (quoting *Chevron*, 467 U.S. at 843 n.9).

Here, despite the existence of various regulations and internal documents purporting to implement the VBA, neither party argues that the VBA is ambiguous or that the VAAR regulations or the 2010 and 2016 memoranda are entitled to deference under *Chevron*. Rather, both parties argue that the statutes before us—when properly construed and reconciled—unambiguously compel the result they seek.

Before turning to the statutory interpretations the parties urge, we must first consider the question of the Claims Court's jurisdiction over PDS Consultants' complaint.

B. The Claims Court Properly Exercised
Subject-Matter Jurisdiction over the Action

The Industries for the Blind argues that the Claims Court lacked jurisdiction to rule on PDS Consultants' claims for two reasons.[6]   First, the Industries for the Blind contends that PDS Consultants challenges "the validity of the VAAR and the AbilityOne Program as a whole," and that such a challenge to the validity of a regulation or statute "rests exclusively with the federal district courts under the authority of the [Administrative Procedure Act]." Indus. for the Blind Br. 22, 24.  Second, the Industries for the Blind argues that purchases from the List "are not 'procurements' for purposes of Tucker Act jurisdiction." *Id.* at 28.  Instead, the only List procurements arising under Tucker Act jurisdiction, according to the Industries for the Blind, are AbilityOne's decisions to add or remove products and services from the List. *See id.* at 28–29.

The Claims Court can exercise jurisdiction under the Tucker Act over "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  The Tucker Act further provides that the Claims Court "shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded." *Id.*

---

[6]    The Government does not appeal this issue.  Rather, the Government has taken the opposing view in related litigation, contending that such actions are essentially bid protests that fall under the Claims Court's jurisdiction. *See Nat'l Indus. for the Blind v. Dep't of Veterans Affairs*, No. 1:17-cv-00992-KBJ (D.D.C. Aug. 22, 2017), ECF No. 30 at 11–14.

PDS Consultants' claims fall squarely within Tucker Act jurisdiction. An "interested party" under the Tucker Act is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A); *see Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) ("We . . . construe the term 'interested party' in § 1491(b)(1) in accordance with the [Competition in Contracting Act] . . . ."). PDS Consultants meets this requirement, as it is an actual or prospective service-disabled veteran-owned small business bidder on the VISNs 2 and 7 eyewear procurements whose direct economic interest would be affected by the contract award (or failure thereof). And, rather than challenge the validity of the VAAR and AbilityOne programs as the Industries for the Blind contends, PDS Consultants alleged a statutory violation—namely, that the VA acted in violation of the VBA by awarding contracts without first conducting the Rule of Two analysis. Industries for the Blind does not—nor could it—dispute that the VBA is a statute that relates to all VA procurements. Far from being "tangentially related to a government procurement," *Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1381 (Fed. Cir. 2018) (finding appropriations provision tangential to, and thus, not "related to" a procurement), the VBA dictates the methodology the VA must employ for its procurements. As an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement," PDS Consultants' action arises under the Claims Court's jurisdiction.

Regarding whether the Industries for the Blind's contracts are procurements, we have found "procurements" under the Tucker Act to encompass "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout."

*Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1345–46 (Fed. Cir. 2008) (emphasis omitted). "To establish jurisdiction pursuant to this definition, [PDS Consultants] must demonstrate that the government at least initiated a procurement, or initiated 'the process for determining a need' for" eyewear for VISNs 2 and 7. *Id.* at 1346. PDS Consultants has satisfied this requirement. The Industries for the Blind's agreements in VISNs 2 and 7, stemming from VA procurements, are legally binding contracts requiring the Industries for the Blind to furnish eyewear and related services and the VA to pay for it. Such contracts are encompassed within the Tucker Act's broad coverage of "procurements."

Accordingly, the Claims Court did not err in finding that it had jurisdiction over PDS Consultants' claims.

## C. The VA is Required to Use the Rule of Two Even When Goods and Services Are on the List

Now that we have determined that the Claims Court properly exercised jurisdiction over PDS Consultants' complaint, we next examine whether the Claims Court erred in its substantive legal analysis. We conclude that it did not.

"As in any case of statutory construction, our analysis begins with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (internal quotation marks omitted). "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). We "must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529

U.S. 120, 133 (2000)). This is because statutory "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994).

The two statutory provisions at the heart of this case are the VBA, 38 U.S.C. § 8127(d), and the JWOD, 41 U.S.C. § 8504(a). Section 8127(d) of the VBA provides that, subject to two exceptions not relevant here, VA contracting officers "shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans," provided they have a "reasonable expectation" (1) "that two or more small business concerns owned and controlled by veterans will submit offers" and (2) "that the award can be made at a fair and reasonable price that offers best value to the United States." 38 U.S.C. § 8127(d). The Supreme Court in *Kingdomware* held that, because it contains the word "shall," § 8127(d) "unambiguously requires the [VA] to use the Rule of Two before contracting under the competitive procedures." 136 S. Ct. at 1976.

Section 8504(a) of the JWOD also contains the word "shall." It provides that "[a]n entity of the Federal Government intending to procure a product or service on the [List] . . . *shall* procure the product or service from a qualified nonprofit agency for the blind or a qualified nonprofit agency for other severely disabled" in accordance with regulations promulgated by and prices set by AbilityOne, "if the product or service is available within the period required by the entity." 41 U.S.C. § 8504(a) (emphasis added). Because § 8504(a) includes the word "shall" and because it specifies the terms by and conditions under which federal agencies, which would include the VA, shall procure products or services that are on the List, § 8504(a) on its face seems to also obligate the VA to procure products and services on the List from qualified nonprofit agencies for the blind or other severely disabled individuals where such products and services are "availa-

ble within the period required by the entity." *See King-domware*, 136 S. Ct. at 1977 ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.").

As both statutes contain mandatory language, we must determine whether and to what extent they conflict with one another. If it is possible to give effect to both statutes, we must do so. *Watt v. Alaska*, 451 U.S. 259, 267 (1981) (court must read statutes to give effect to each if it can do so while preserving their sense and purpose). If any interpretation of the statutory provisions at issue allows both statutes to remain operative, the court must adopt that interpretation absent a clear congressional directive to the contrary. *Miccosukee Tribe of Indians of Fla. v. United States Army Corps of Eng'rs*, 619 F.3d 1289, 1299 (11th Cir. 2010) (interpretation that allows both statutes to stand must be employed).

The government argues that any statutory conflict can be avoided by interpreting § 8127(d) "as applying only to non-mandatory, competitive awards." Gov't Br. 19. It argues that the mandatory procurements under the JWOD are not governed by § 8127(d), despite the absence of an express exception to that effect. We do not read § 8127(d) so narrowly.

Rather than limit its application to competitive contracts, § 8127(d) requires the VA to "award contracts on the basis of competition." That is, by its express language, the statute applies to *all* contracts—not only *competitive* contracts. The statute requires that, when the Rule of Two is triggered—i.e., when "the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States"—the VA must apply competitive mechanisms to determine to whom the contract should be

awarded. *See Kingdomware*, 136 S. Ct. at 1976 (finding that the text of § 8127 "requires the [VA] to apply the Rule of Two to *all contracting determinations*." (emphasis added)). And, while § 8127(d) applies only when the Rule of Two is satisfied, § 8127(i) is broader and requires the VA to prioritize veterans (with and without service-connected disabilities) under subsections (b) and (c), even when the Rule of Two is not satisfied.

So, we must turn to the question of whether an alternative means for reconciling these provisions can be found in standard principles of statutory interpretation. We find that it can.

"A basic tenet of statutory construction is that a specific statute takes precedence over a more general one." *Arzio v. Shinseki*, 602 F.3d 1343, 1347 (Fed. Cir. 2010) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general.")); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one."). While the JWOD applies to all agencies of the federal government, the VBA applies only to VA procurements and only when the Rule of Two is satisfied. The express, specific directives in § 8127(d), thus, override the more general contracting requirements of the JWOD.

A comparison of the provisions and stated goals of the VBA with those of its predecessor, the Veterans Benefit Act of 2003, reinforces this conclusion. The 2003 Act, unlike the VBA, authorized but did not require *all* contracting officers within the federal government to apply the Rule of Two when contracting with service-disabled

veteran-owned small businesses (as opposed to all veteran-owned small businesses) under title 15 of the United States Code. Specifically, it amended 15 U.S.C. § 657(f) to add the following provision:

> a contracting officer *may* award contracts on the basis of competition restricted to small business concerns owned and controlled by service-disabled veterans if the contracting officer has a reasonable expectation that not less than 2 small business concerns owned and controlled by service-disabled veterans will submit offers and that the award can be made at a fair market price.

Pub. L. No. 108-183 § 308, 117 Stat. 2651, 2662 (2003) (emphasis added). Importantly, the 2003 Act, in addition to applying to all agency procurement decisions involving service-disabled veteran-owned small businesses, conferred *discretion* on contracting officers to apply the Rule of Two through the use of the permissive word "may." *See United States v. Rodgers*, 461 U.S. 677, 706 (1983) (explaining that "[t]he word 'may,' when used in a statute, usually implies some degree of discretion"). The 2006 VBA, however, includes the *mandatory* requirement that VA contracting officers "*shall* award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans" if the Rule of Two is satisfied, subject to two statutorily defined, non-competitive exceptions. 38 U.S.C. § 8127(d) (emphasis added).

The VBA, moreover, was expressly enacted to "increase contracting opportunities for small business concerns owned and controlled by veterans and . . . by veterans with service-connected disabilities." 38 U.S.C. § 8127(a)(1). Consistent with the VA's duty to support and champion the veteran community, the VBA created the Veterans First Contracting Program ("Veterans First"), which requires the VA to give "contracting priori-

ty" to qualified service-disabled veteran-owned small businesses *and* veteran-owned small businesses. *See* 38 U.S.C. §§ 8127–8128. And it specifies that the Secretary, "[i]n procuring goods and services pursuant to a contracting preference under this title *or any other provision of law . . . shall give priority* to a small business concern owned and controlled by veterans, if such business concern also meets the requirements of that contracting preference." *Id.* § 8128(a) (emphasis added).

The VBA also lacks any exception for procurements that would otherwise be governed by the JWOD. We assume that Congress was aware that it wrote an exception into the agency-wide Veterans Benefits Act in 2003 when it left that very same exception out of the VBA only three years later.

Additionally, "when two statutes conflict, the later-enacted statute controls." *Miccosukee Tribe*, 619 F.3d at 1299; *see also United States v. Estate of Romani*, 523 U.S. 517, 532 (1998) (finding later-enacted, more specific statute controlling). As the VBA was enacted over 30 years after the JWOD was last amended,[7] we can infer that Congress intended the VBA to control in its narrower arena, and the JWOD to dictate broader procurements outside of the VA. Because we can give meaning to both statutes under this interpretation, we avoid any repeal of the JWOD by implication. *See Morton v. Mancari*, 417 U.S. 535, 549 (1974) ("[R]epeals by implication are not favored."). That is, agencies outside of the VA must still comply with the JWOD, as does the VA when the Rule of Two is not implicated. We, therefore, conclude that the requirements of the more specific, later-enacted VBA take

---

[7] Title 41 was reorganized in 2011, but that recodification did not substantively amend the relevant language here.

precedence over those of the JWOD when the two statutes are in apparent conflict.

Our conclusion finds support in the Supreme Court's decision in *Kingdomware*. There, the Court considered whether the VA must use the Rule of Two every time it awards contracts, or whether it instead must use the rule only to the extent necessary to meet annual minimum goals for contracting with veteran-owned businesses. *Kingdomware*, 136 S. Ct. at 1973. The Court stated that the VBA's requirement to set aside contracts for veteran-owned small businesses "is mandatory, not discretionary," and held that the text of § 8127(d) "unambiguously" requires that the VA "apply the Rule of Two to *all* contracting determinations and to award contracts to veteran-owned small businesses." *Id.* at 1976 (emphasis added). It reasoned that § 8127(d) expressly provides that the VA "shall award contracts" to veteran-owned small businesses and service-disabled veteran-owned small businesses except in two statutorily defined circumstances, and that the provision "requires" the VA to "use the Rule of Two *before* awarding a contract to another supplier." *Id.* at 1977 (emphasis added). The Court held that these mandatory requirements in the VBA override the purchase requirements set forth in the Federal Supply Schedules included in FAR Part 8. *Id.* at 1978–79. While the precise question we consider today was not presented in *Kingdomware*, we may not ignore the Court's finding that the VBA "is mandatory, not discretionary" and that § 8127(d) "requires the Department to apply the Rule of Two to *all* contracting determinations and to award contracts to veteran-owned small businesses." 136 S. Ct. at 1975–76 (emphasis added). Competitive or not, placing an item on the List, or choosing an item therefrom under the JWOD, is a form of awarding a contract. And under § 8127(d) and *Kingdomware*, the VA, in such a situation, is required to first conduct a Rule of Two analysis.

Our conclusion is not, as the government and the Industries for the Blind contend, inconsistent with the FAR. They argue that, even if § 8127(d) applies to all VA contracts, it is superseded by Part 8 of the FAR, which "expressly recognizes the AbilityOne Program as . . . a mandatory Government source requirement." Indus. for the Blind Br. 38; *see also* Gov't. Br. 30. According to the Appellants, the FAR requires use of mandatory sources like AbilityOne prior to competitive sources. We disagree. Even if a regulation could ever overrule a clear statutory mandate, the FAR does not purport to do so with respect to § 8127(d). FAR Part 8 begins by stating, "[e]xcept . . . as otherwise provided by law," therefore expressly acknowledging that the use of "mandatory . . . sources," like AbilityOne, can be superseded. 48 C.F.R. § 8.002.

Indeed, under § 8128(a), the Secretary of Veterans Affairs, when "procuring goods and services pursuant to a contracting preference under [title 38] *or any other provision of law . . . shall give priority* to a small business concern owned and controlled by veterans, if such business concern also meets the requirements of that contracting preference." 38 U.S.C. § 8128(a) (emphases added). The phrase "or any other provision of law" by its terms encompasses the JWOD.

Thus, where a product or service is on the List and ordinarily would result in the contract being awarded to a nonprofit qualified under the JWOD, the VBA unambiguously demands that priority be given to veteran-owned small businesses. While we are mindful of Appellants' policy arguments, we must give effect to the policy choices made by Congress. We find that by passing the VBA, Congress increased employment opportunities for veteran-owned businesses in a narrow category of circumstances, while leaving intact significant mechanisms to protect such opportunities for the disabled.

### III. CONCLUSION

Considering the plain language of the more specific, later-enacted VBA, as well as the legislative history and Congress's intention in enacting it, we affirm.

**AFFIRMED**

COSTS

No costs.