*1313 Opinion for the court filed by Circuit Judge CLEVENGER.
Concurring opinion filed by Circuit Judge REYNA.
CLEVENGER, Circuit Judge.
This is a takings case arising from the government’s releases of water from a dam in central California. Downstream property owners sued in the Court of Federal Claims, alleging that the releases unlawfully impaired their property rights in the water and inundated their land.
The government had released the water in accordance with a consent order entered by a district court and expressly approved by Congress. The consent order was the result of environmental litigation pursued over a number of years by certain groups interested in the ecological fate of the river. After the present lawsuit was filed, two of these groups moved to intervene as of right, arguing that this case implicated their interests. The Court of Federal Claims denied their motion, finding that the groups’ interests were sufficiently aligned with the government’s as to create no foundation for intervention. Wolfsen Land & Cattle Co. v. United States, 98 Fed.Cl. 507 (2011) (“Fed.Cl. Op.”). We affirm.
I
A
This case’s story started in 1942, when the U.S. Bureau of Reclamation dammed the upper San Joaquin River near Friant, California. Friant Dam, which still operates today, generates electricity and collects water for agriculture. But it also caused portions of the river below to dry up, leading to the extermination of Chinook salmon and other species from areas they had previously occupied, as well as other ecological consequences.
In 1988, a group of plaintiffs sued the federal government over the dam’s operation. The Pacific Coast Federation of Fishermen’s Associations and the Natural Resources Defense Council (collectively, “PCFFA”) were among them. They claimed that the dam’s operation contravened various state and federal environmental protection laws. For the next eighteen years, the parties litigated in the district court for the Eastern District of California.
In 2006, they finally reached a settlement. The agreement obliged the government to release water from the dam for the purpose of restoring and maintaining fish populations downstream, while continuing to support the surrounding landowners who had come to depend on the water the dam collected. See Stipulation of Settlement, Natural Res. Def. Council v. Rodgers, No. CIV SS-88-1658 (E.D.Cal. Sept. 16, 2006), ECF No. 1341 (“Litigation Settlement”). The Litigation Settlement also bound the signatories to request implementing legislation from Congress, as some contemplated actions could not be taken without legislative authority. Id. ¶ 8. This was done, and Congress subsequently passed the San Joaquin River Restoration Settlement Act, Pub. L. No. 111-11, §§ 10001-10011, 123 Stat. 1349 (2009) (“Settlement Act”), which authorized and directed the Secretary of the Interior to implement the Litigation Settlement.
All this having been done, in October 2009 the Bureau of Reclamation initiated the first release of water from the dam. Releases have continued since, in accordance with the Litigation Settlement and the Settlement Act.
B
Those releases gave rise to the present case. In August of 2010, Wolfsen Land & *1314 Cattle Co., along with other owners of land downstream of Friant Dam (collectively, “Wolfsen”), sued the government for taking of property. Wolfsen argued that the releases impaired its protectable interest in the released water. It also contended that its land had been damaged as a result of inundation by the released water. Wolfsen sought compensation and legal expenses.
PCFFA moved to intervene as of right under Court of Federal Claims Rule 24(a)(2). It argued that the case implicated its interest in full performance of the Litigation Settlement and under the Settlement Act. PCFFA presented several lines of reasoning to justify its motion, but chief was this: judgment for Wolfsen could involve a ruling that Wolfsen and others in its position had a protectable property interest in the water released past Friant Dam. Such an outcome, said PCFFA, would substantially threaten the government’s ability to make the water releases contemplated by the Litigation Settlement and the Settlement Act. As a beneficiary of those instruments, PCFFA claimed a right to participate in proceedings before the Court of Federal Claims.
Wolfsen opposed PCFFA’s motion; the government neither supported nor opposed. The Court of Federal Claims denied the motion. Fed.Cl. Op.
PCFFA appealed to this court. Denial of a motion to intervene is a final judgment and immediately appealable. Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 377, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987). This court has jurisdiction over final judgments of the Court of Federal Claims. 28 U.S.C. § 1295(a)(3).
II
This court has not previously identified the standard to be applied when reviewing a trial court’s denial of a motion to intervene as of right. PCFFA argues for de novo review, while Wolfsen urges review for abuse of discretion. Both sides cite authority from the regional circuits, which are split on the question, though slightly more courts favor de novo review. Compare, e.g., United States v. Aerojet Gen. Corp., 606 F.3d 1142, 1148 (9th Cir.2010) (applying de novo review), United States v. Albert Inv. Co., 585 F.3d 1386, 1390 (10th Cir.2009) (same), S. Dakota v. Ubbelohde, 330 F.3d 1014, 1024 (8th Cir.2003) (same), Grutter v. Bollinger, 188 F.3d 394, 398 (6th Cir.1999) (same), Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir.1994) (same), and Nissei Sangyo Am., Ltd. v. United States, 31 F.3d 435, 438 (7th Cir.1994) (same), with Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 64 (1st Cir.2008) (applying abuse of discretion review), Person v. N.Y. State Bd. of Elections, 467 F.3d 141, 144 (2d Cir.2006) (same), Brody v. Spang, 957 F.2d 1108, 1115 (3d Cir.1992) (same), and In re Sierra Club, 945 F.2d 776, 779 (4th Cir.1991) (same).
We find it unnecessary to reach this question, as we see no error in the Court of Federal Claims’ judgment. Cf. Am. Mar. Transp., Inc. v. United States, 870 F.2d 1559, 1561 (Fed.Cir.1989) (finding no need to reach this issue in similar circumstances). We would affirm under both proposed standards of review. Because the question of the standard to apply is non-dispositive, we need not address it.
Ill
A
The Court of Federal Claims’ rule concerning intervention as of right states:
(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
*1315 (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant’s ability to protect its interest, unless existing parties adequately represent that interest.
Fed. Cl. R. 24(a).
These requirements are construed in favor of intervention. Am. Mar. Transp., 870 F.2d at 1561. The rule sets out a four-part test. First, the motion must be timely. Second, the movant must claim some interest in the property affected by the case. This interest must be “legally protectable” — merely economic interests will not suffice. Id. at 1562. Third, that interest’s relationship to the litigation must be “of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.” Id. at 1561. Fourth, and most importantly for this case, the movant must demonstrate that said interest is not adequately addressed by the government’s participation. Id. at 1560.
B
In this appeal, timeliness is not disputed. But in denying PCFFA’s motion the Court of Federal Claims held that PCFFA could not satisfy Rule 24(a)(2)’s other three requirements.
First, the court held that PCFFA had failed to show a direct, non-contingent interest in this case. Fed.Cl. Op., 98 Fed.Cl. at 512-15. It reasoned that the only direct result of judgment for Wolfsen in this case would be the government paying money damages. Any collateral rulings (i.e., a determination that Wolfsen had a protecta-ble interest in the released water) would implicate PCFFA only secondarily, and thus were not the kind of interests protected by the rule. ' Because we resolve this appeal on other grounds, we need not reach this aspect of the Court of Federal Claims’ reasoning.
Second, the court held that even if PCFFA had alleged a protectable interest, the interest did not relate to this case in such a way that failure to permit intervention would impede PCFFA’s ability to protect itself. The court pointed out that if, in the aftermath of judgment in this case, the government failed to meet its obligations to PCFFA, PCFFA could seek relief in district court. Id. at 515. Again, because we resolve this appeal on other grounds we need not take up this argument.
Third, the court held that even if PCFFA had a protectable interest, and even if that interest related to this case in the manner contemplated by the rule, PCFFA’s interests were adequately protected by the government’s participation in this case. Id. at 516. As set forth below, we agree, and on that basis affirm.
C
The burden of showing inadequacy of representation is “minimal,” requiring only a showing that an existing party’s representation of PCFFA’s interests “may be” inadequate as to some aspect of the case at bar. Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (permitting intervention by a union member notwithstanding participation of the Secretary of Labor because the Secretary’s twin duties to represent both the aggrieved member and the public generally might engender an adversity of interest). This court has not frequently considered the law surrounding intervention as of right, nor has it assessed the showing required for a *1316 prospective intervenor to carry his “minimal” burden of proving inadequate representation by any existing party. In such circumstances, the decisions of regional circuits, while not binding, are nevertheless “persuasive authority and instructive.” Bank of Guam v. United States, 578 F.3d 1318, 1326 n. 4 (Fed.Cir.2009).
The Ninth Circuit recently considered how to analyze adequacy of representation:
In evaluating adequacy of representation, we examine three factors: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor’s arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir.2003). The most important factor in assessing the adequacy of representation is how the interest compares with the interests of existing parties. If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises. League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1305 (9th Cir.1997). To rebut the presumption, an applicant must make a “compelling showing” of inadequacy of representation. Arakaki, 324 F.3d at 1086.
Citizens for Balanced Use v. Mont. Wilderness Ass’n, 647 F.3d 893, 898 (9th Cir.2011) (internal quotation marks omitted and citations edited). Other regional circuits have embraced similar approaches. E.g., San Juan Cnty. v. United States, 503 F.3d 1163, 1187 (10th Cir.2007); Jones v. Prince George’s Cnty., 348 F.3d 1014, 1019 (D.C.Cir.2003); Maine v. U.S. Fish & Wildlife Serv., 262 F.3d 13, 19-20 (1st Cir.2001); Jenkins ex rel. Jenkins v. Missouri, 78 F.3d 1270, 1275 (8th Cir.1996); Meyer Goldberg, Inc. of Lorain v. Goldberg, 717 F.2d 290, 292 (6th Cir.1983). We therefore join those courts in adopting such a framework for this case. To merit intervention as of right, PCFFA has the burden to make a compelling showing that its interests may not be adequately protected by the government insofar as there are aspects of the case that the government might not — or might not be able to— pursue to their fullest. In addition, PCFFA must overcome the presumption that the government as sovereign adequately represents the interest of citizens concerning matters that invoke “sovereign interests.” See Standard Heating & Air Conditioning Co. v. City of Minneapolis, 137 F.3d 567, 572 (8th Cir.1998).
In its briefing and argument, PCFFA alleges two categories of interests implicated by Wolfsen’s claim.
1
First, PCFFA argues that the Court of Federal Claims, in adjudicating Wolfsen’s claim, might render some ruling making robust implementation of the Litigation Settlement either practically or totally impossible. In this case Wolfsen alleges, inter alia, a legal right to some of the water the government released. We perceive no dispute that a judicial order to that effect, if made, would complicate the government’s plans to release water past Friant Dam. If Wolfsen has a protectable interest in the released water, PCFFA reasons that so might other nearby landowners. The government could find itself unable to release water in the quantities necessary to effectuate the goals of the Litigation Settlement (e.g., ecological restoration) without rights from these unnamed persons, some of whom might be unwilling to sell at a reasonable price. *1317 PCFFA further points out that both the Litigation Settlement and the Settlement Act bar the government from using eminent domain to acquire water rights for the releases. See Litigation Settlement ¶ 13 (stating that the government shall acquire water rights from willing sellers); Settlement Act § 10004(a)(3) (authorizing acquisition of water rights provided that “such acquisitions shall only be made from willing sellers and not through eminent domain”). PCFFA expresses concern that the government might conduct itself in such a way as to technically comply with the Litigation Settlement, while undermining its substance and frustrating its goals.
These concerns do not demonstrate any cognizable reason why PCFFA’s participation in this case is, or even may be, necessary. As to this case, the government and PCFFA have precisely the same motivation, which is to see Wolfsen’s claim fail, for as many reasons as possible. It is, after all, the government who would be liable for money damages if Wolfsen’s claim succeeds. And even if PCFFA’s fears are realized, and Wolfsen’s claim is confirmed, it is the government that would be caught between the rights of landowners and the terms of the settlement. We cannot see — and PCFFA has not shown— any reason why the government would not defend against Wolfsen’s claim to the utmost, just as PCFFA would do were it a party.
PCFFA’s arguments to the contrary are unavailing. While acknowledging that it and the government share a litigation goal — defeat of Wolfsen’s claim — PCFFA argues that any presumption of adequate representation is rebutted by its history of litigation against the government concerning Friant Dam. PCFFA argues that the government was “recalcitrant” during that litigation and refused to accept the validity of PCFFA’s arguments. “But for [PCFFA’s] litigation,” it argues, “the United States would never have commenced the water releases over which the Wolfsen Plaintiffs now sue.” Id. at 39. PCFFA also urges that the government departs from PCFFA’s interests in two respects: first, the government wants to avoid financial liabilities that PCFFA does not face, and second, the government as sovereign must implement the Settlement Act “in a way that is responsive to an array of competing concerns,” while PCFFA does not share that duty.
But even if we accept all these assertions, they do not convey any reason to expect that this litigation would proceed differently with PCFFA as a party than without. Neither its past litigation history, its financial stake in this case, nor its obligations as sovereign make the government any less motivated to contest Wolf-sen’s claim than PCFFA is. PCFFA has shown no argument that the government would leave aside but PCFFA would not, or any reason to believe the government would be unwilling to pursue some theory that PCFFA would pursue in order to defeat Wolfsen’s claim. Because it can show no divergence in either motivations or approaches between itself and the government as to this case, PCFFA has also failed to overcome the presumption that the government as sovereign can adequately represent its interests. It cites cases in which the government’s preferred outcome for a case differed (or might differ) from that of the intervenor. See generally South Dakota v. Ubbelohde, 330 F.3d 1014, 1025 (8th Cir.2003); Sierra Club v. Espy, 18 F.3d 1202, 1208 (5th Cir.1994). As already discussed, that is not the case here. We cannot see how the government would prefer Wolfsen to prevail (and to take money damages) in whole or in part. The government’s goal matches PCFFA’s goal identically.
*1318 This case illustrates why entry into a case is presumptively barred for an in-tervenor whose specific litigation goals identically match those of an existing party. PCFFA has not demonstrated that its participation could add some material aspect to the case beyond what is already present. In such circumstances, denial of intervention will conserve scarce judicial resources with no danger to the movant’s legal rights or interests. We of course do not suggest that the government must always be viewed an as adequate spokesman for an interested private litigant. Whether such is so in a given case depends on the facts of the case. Here, PCFFA has not yet shown anything that it would add in defense of the suit beyond what the government will offer.
2
PCFFA also identifies a second danger posed by the Wolfsen lawsuit. PCFFA worries that the case might provoke a private settlement that affects the government’s ability to fully meet the requirements of the Litigation Settlement and Settlement Act. But even assuming arguendo that a Wolfsen settlement could affect PCFFA’s rights or interests in the water releases contemplated by its own settlement, such a concern does not support PCFFA’s argument for intervention at this time.
PCFFA’s specific concern is that in order to achieve settlement the government might bind itself to either not release further water from Friant Dam or to reclassify released water in such a way as to frustrate the goals of the Litigation Settlement.
PCFFA acknowledges that intervention, even if granted, would not bestow on it any authority over the settlement negotiations, or to force the inclusion or exclusion of any specific terms. PCFFA argues that it should be allowed to intervene so that in the event Wolfsen or the government moved for express judicial approval of their settlement (e.g., as a consent decree), PCFFA could review the motion and voice any concerns to the court.[1] PCFFA acknowledges that it would have no right to veto such a settlement, only to raise objections. Local No. 93, International Association of Firefighters v. City of Cleveland, 478 U.S. 501, 528-29, 106 S.Ct. 3068, 92 L.Ed.2d 405 (1986). PCFFA also argues that, if it were allowed to intervene, it could argue that the court should disapprove the settlement and refuse to dismiss. See Fed. Cl. R. 41(a) (stating that if dismissal is not stipulated to by “all parties who have appeared,” “an action may be dismissed ... only by court order, on terms that the court considers proper”). But these concerns are at this point speculative and cannot justify intervention unless and until there is such a settlement.
PCFFA also argues that it should be permitted to intervene now so that it would receive early warning of what it might consider a bad settlement in this case. But, like the Court of Federal Claims, we conclude that this desire is insufficient to create a right of intervention under Rule 24(a).
We also note that by this appeal Wolf-sen, the government, the Court of Federal Claims, and this court have all been apprised that any settlement seeming to impair full performance of the Litigation *1319 Settlement is likely to engender further litigation. In that light, we assume the parties will apprise PCFFA of any pending settlement impheating future releases of water past Friant Dam or the ecological goals that were at stake in the district court litigation.
Finally, we read the Court of Federal Claims’ denial of intervention as entered without prejudice to a possible future motion. Should a proposed settlement reveal some basis for arguing that the government may not adequately represent some PCFFA interest, PCFFA can seek to intervene at that time, and the Court of Federal Claims can then determine whether PCFFA meets the tests for intervention as of right. We express no view on the merits of any such later motion to intervene as of right.
IV
For the reasons stated above, the judgment of the Court of Federal Claims is affirmed.
AFFIRMED

. At oral argument, Wolfsen asked whether that the Court of Federal Claims, as a tribunal of limited jurisdiction and authority, would even possess the power to enter a consent order purporting to retain jurisdiction over the settling parties’ future conduct. This question, while thought-provoking, is speculative as to this appeal, and we decline to opine on it.