Filed 12/3/20  Ahn v. Hestrin CA4/2
See Dissenting Opinion

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| SANG-HOON AHN et al., | |
| Plaintiffs and Respondents, | E073530 |
| v. | (Super.Ct.No. RIC1607135) |
| MICHAEL HESTRIN, etc., et al., | OPINION |
| Defendants, | |
| MATTHEW FAIRCHILD et al., | |
| Intervenors, | |
| CATHERINE S. FOREST, | |
| Movant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Irma Poole Asberry, Judge.  Affirmed.

Law Office of Jon B. Eisenberg and Jon B. Eisenberg; O'Melveny & Myers, John C. Kappos, Bo K. Moon, and Jason A. Orr; Compassion & Choices and Kevin Díaz for Movant and Appellant.

Daniel Mansueto; Catherine W. Short, Allison K. Aranda, and Alexandra M. Snyder; and Karen M. Kitterman for Plaintiffs and Respondents.

No appearance for Defendants.

No appearance for Intervenors.

The End of Life Option Act (Health & Saf. Code, §§ 443-443.2) (Act) permits a doctor, under narrow circumstances, to prescribe "aid-in-dying" to a terminally ill patient. "Aid-in-dying" is defined, essentially, as a drug that will "bring about . . . death . . . ." (Health & Saf. Code, § 443.1, subd. (b).)

The plaintiffs in this action seek to have the Act declared unconstitutional. The defendants, who include the Attorney General and "[t]he State of California by and through the California Department of Public Health" (collectively the Attorney General), seek to uphold the Act as constitutional.

Dr. Catherine S. Forest moved to intervene. She is a doctor who wants to be able to prescribe aid-in-dying pursuant to the Act; thus, like the Attorney General, she seeks to uphold the Act. The trial court denied her motion, finding that she was adequately represented by the Attorney General.

Dr. Forest appeals. In her opening brief, she argues that the Attorney General cannot adequately represent her, primarily because, if the Act is eventually struck down,

the Attorney General will be responsible for prosecuting any doctors who nevertheless continue to provide aid-in-dying.

We will hold that the Attorney General is currently capable of providing adequate representation, and that this hypothetical future possibility is insufficient to show inadequate representation. We also reject certain arguments that Dr. Forest raised for the first time in her reply brief. Hence, we will affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

The Act was enacted in 2015; it went into effect on June 9, 2016. (*People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 490.)

One day before that, this action was filed by five individual physicians,[1] along with a professional organization that promotes ethical standards in the medical profession[2] (collectively the Ahn parties). They seek a declaration that the Act is unconstitutional.

Originally, the only named defendant was Michael Hestrin, in his capacity as District Attorney of Riverside County. However, the Attorney General was granted leave to intervene.

---

[1]     Dr. Sang-Hoon Ahn, Dr. Laurence Boggeln, Dr. George Delgado, Dr. Philip Dreisbach, Dr. Vincent Fortanasce, and Dr. Vincent Nguyen.

[2]     The American Academy of Medical Ethics.

3

Matthew Fairchild and Dr. Forest, both represented by the same counsel, filed a motion for leave to intervene.[3] Fairchild had been diagnosed as having terminal cancer. Dr. Forest was a doctor who treated terminally ill patients and wanted to be able to offer them aid-in-dying. They both argued that they were entitled to intervene because "[their] rights to provide or receive medical aid-in-dying will be determined in this lawsuit . . . ." They also argued that they were not adequately represented by the current defendants because they had an immediate interest in aid-in-dying being available to prevent pain and suffering, whereas the defendants had a less urgent and more abstract interest in upholding the law.

The Attorney General took no position on the motion. The Ahn parties, however, filed an opposition. They argued that "the intervention seeks to have private parties fulfill the public function of law enforcement."

The trial court granted the motion as to Fairchild. However, it denied the motion as to Dr. Forest. It explained: "[Fairchild's] interest [is] not adequately represented by the Attorney General. [His] arguments, positions and interest are unique from that of the Attorney General and [his] interest will be impaired if intervention is denied." On the other hand, "[Dr. Forest's] interest [is] not unique . . . . The State Defendants who are defending the Act are situated to represent her interest adequately."

---

[3] The motion was also brought by Andrea Saltzman. However, Saltzman has since died.

4

It rejected the Ahn parties' argument, stating: "[Fairchild is] not attempting to fulfill the public function of law enforcement. Instead, [he] seek[s] to intervene to assert [his] own personal interest in the Act's validity. Fairchild [is] directly benefitted by the Act and [is] better[ ]situated to present the position of an individual who would seek the opportunities afforded by the Act."

II

THE TRIAL COURT CORRECTLY DENIED INTERVENTION

There are two types of intervention, mandatory and permissive. (Code Civ. Proc., § 387, subd. (d).)

One of the grounds for mandatory intervention is that a nonparty "claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties." (Code Civ. Proc., § 387, subd. (d)(1)(B).) "California cases are not settled on whether we review the denial of a request for mandatory intervention . . . de novo or for abuse of discretion. [Citation.]" (*Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732.)

One of the grounds for permissive intervention is that a nonparty "has an interest in the matter in litigation . . . ." (Code Civ. Proc., § 387, subd. (d)(2).) Permissive intervention may be denied when it would "' . . . "enlarge the scope of the action" or "broaden the issues" so as to litigate matters not raised by the original parties.

5

[Citation.]'" (*Royal Indemnity Co. v. United Enterprises, Inc.* (2008) 162 Cal.App.4th 194, 204.) It also may be denied when "the interests of the original litigants outweigh the intervenors' concerns . . . . [Citations.]" (*People v. Superior Court* (*Good*) (1976) 17 Cal.3d 732, 737.) "We review the denial of permissive intervention for abuse of discretion. [Citations.]" (*Edwards v. Heartland Payment Systems, Inc.*, *supra*, 29 Cal.App.5th at p. 736.)

No one disputes that Dr. Forest has an interest in the subject matter of the action. She is a doctor, and the action will determine whether she can provide a medical service to her patients — a service that she wants to be able to provide.[4]

The trial court denied Dr. Forest's motion to intervene because it found that the Attorney General could adequately represent her interest. At the same time, it *granted* Fairchild's motion to intervene because it found that the Attorney General could *not* adequately represent *his* interest. Dr. Forest does not argue that this was inconsistent or irrational.[5] It was not. Viewing the trial court's ruling in light of the parties' arguments, it evidently felt that Fairchild — because he was facing death — had an interest in expedition that the Attorney General and Dr. Forest did not share.

---

[4]     Dr. Forest argues that she also vicariously shares her patients' interest in access to assisted suicide. Our Supreme Court has held that "'[a] physician has standing to assert his patient's rights *where they may not otherwise be established*.' [Citation.]" (*Lewis v. Superior Court* (2017) 3 Cal.5th 561, 571, italics added.) Here, the trial court *allowed* Fairchild — a patient — to intervene. At that point, there was no need to let Dr. Forest participate as a representative of her patients.

[5]     In her reply brief, she does raise the different argument that it was inconsistent and irrational to deny her *permissive* intervention. (See *post*.)

Rather, Dr. Forest argues that the finding was erroneous because, if the Act is struck down, the Attorney General could potentially have to prosecute her and other similarly situated doctors if they continue to provide assisted suicide. As long as this action is pending, however, the Attorney General has no interest in prosecuting her. To the contrary, he has an interest in upholding the Act, which prohibits prosecuting her. If and when the Act is struck down, this action will be over; the Attorney General will then be free to prosecute Dr. Forest (if necessary and if he so desires).

We recognize the hypothetical possibility that: (1) the trial court might strike down the Act, (2) the Attorney General might appeal, (3) the judgment might not be stayed (automatically or otherwise), (4) thereafter, Dr. Forest or some other doctor might nevertheless provide aid-in-dying to a terminally ill patient, (5) a district attorney might prosecute the doctor, (5) the district attorney might obtain a conviction, and (6) the doctor might appeal the conviction *while the Attorney General's appeal is still pending*. In that situation, the Attorney General could have simultaneous duties to represent Dr. Forest's interest in the civil appeal and to oppose her interest in the criminal appeal. However, this scenario is too speculative and conjectural to demand intervention now. We also note that, under those circumstances, *Fairchild* could still be a party to the appeal and could represent Dr. Forest's interest.

Dr. Forest responds that, once the Attorney General is allowed to represent her interest, he will take on a duty of loyalty to her, which would conflict with his potential future duty to prosecute her. An "attorney has a duty of loyalty to his or her clients.

7

[Citations.]" (*Zador Corp. v. Kwan* (1995) 31 Cal.App.4th 1285, 1293.)  Hence, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent."  (Rules Prof. Conduct, rule 1.9(a).)

However, one of the very cases that Dr. Forest cites in support of this contention, *People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, indicates that a prosecutor takes on a duty of loyalty to an individual only if the prosecutor "formal[ly] represent[s]" that individual (*id*. at p. 754) — e.g., when the prosecutor "represent[s] the widow of a crime victim in writ proceedings challenging defense access to the crime victim's dwelling."  (*Id*. at p. 753.)  Here, the Attorney General can represent Dr. Forest's interest without making her his client and thus without taking on any duty of loyalty to her.  In any event, even assuming we are wrong about this, that would just mean that, in any such future prosecution, Dr. Forest could move to recuse the Attorney General.

In her reply brief, Dr. Forest argues for the first time that the Attorney General cannot adequately represent her interest because his goal is to uphold the Act, whereas her goal is to personally provide aid-in-dying.  She forfeited this argument by failing to raise it in her opening brief.  "We generally do not consider arguments raised for the first time in a reply brief.  [Citation.]" (*Raceway Ford Cases* (2016) 2 Cal.5th 161, 178.) "Obvious reasons of fairness militate against consideration of an issue raised initially in

the reply brief of an appellant. [Citations.]" (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)

That is not to say that, if not forfeited, it would have merit.

Dr. Forest posits a distinction between an "outcome" and an "ultimate objective." In her view, even if a party and a nonparty seek the same outcome, the party cannot adequately represent the nonparty if they have different ultimate objectives. As applied here, she and the Attorney General seek the same outcome (i.e., upholding the Act), but she contends that they have different ultimate objectives (i.e., she wants to personally provide aid-in-dying).

Federal cases[6] hold that "'[i]f an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises. [Citation.]" (*Wolfsen Land & Cattle Co. v. Pacific Coast Federation of Fishermen's Associations* (Fed. Cir. 2012) 695 F.3d 1310, 1316; accord, *Freedom from Religion Foundation, Inc. v. Geithner* (9th Cir. 2011) 644 F.3d 836, 841.) However, it does not appear that these cases use "ultimate objective" to mean anything different from "outcome." (See, e.g., *Freedom from Religion Foundation, Inc. v. Geithner*, *supra*, at

---

[6] "Although not identical in all respects, section 387 is modeled in part after rule 24 of the Federal Rules of Civil Procedure. . . . It follows that the Legislature must have intended that the two mandatory intervention statutes should have the same meaning, and we may look to authorities construing the parallel federal rule for guidance. [Citations.]" (*Carlsbad Police Officers Association v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 151; but see *City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030, 1043 [federal intervention standard is "more lenient" than state intervention standard.)

9

p. 841 [government defendants and nonparty had the same "ultimate objective," namely "to uphold the challenged statutes"].)  Most important, if the party and nonparty have *different* ultimate objectives, that simply means the *presumption* does not apply; it does not conclusively *disprove* adequate representation.

Actually, the adequate representation inquiry is less conceptual and more pragmatic than Dr. Forest would have it.  It is simply this:  Given that both the Attorney General and Dr. Forest want to uphold the Act, but Dr. Forest *also* wants to provide aid-in-dying to her terminally ill patients, does it follow that he will not adequately represent her?  It does not.  There is no reason why he would not present the same arguments.

As Dr. Forest acknowledges, federal cases also recognize a second, separate presumption:  "There is a general presumption that a government entity is an adequate representative.  [Citation.]"  (*Benjamin ex rel. Yock v. Department of Public Welfare of Pennsylvania* (3d Cir. 2012) 701 F.3d 938, 958.)  "Such presumption can be rebutted only by 'a compelling showing to the contrary.'  [Citation.]"  (*Freedom from Religion Foundation, Inc. v. Geithner*, *supra*, 644 F.3d at p. 841.)  "'A difference of opinion concerning litigation strategy . . . does not overcome the presumption of adequate representation.'  [Citation.]"  (*F.T.C. v. Johnson* (8th Cir. 2015) 800 F.3d 448, 452; accord, *League of United Latin American Citizens v. Wilson* (9th Cir. 1997) 131 F.3d 1297, 1306.)  Here, the Attorney General is entitled to this presumption, and Dr. Forest has not rebutted it.

In her opening brief, Dr. Forest does not argue that, even if she was not entitled to mandatory intervention, the trial court abused its discretion by denying her permissive intervention.[7]

Belatedly, however, in her reply brief, she argues that the trial court granted Fairchild *mandatory* intervention, and thus it must have found that he had an interest in the action; she claims she has the same interest as Fairchild (see fn. 4, *ante*), and therefore she was necessarily entitled to *permissive* intervention. Once again, she has forfeited this argument. (*Raceway Ford Cases*, *supra*, 2 Cal.5th at p. 178.)

Separately and alternatively, however, we reject it because Dr. Forest does not discuss how the requirements for permissive intervention apply here. As mentioned, even a person who has an interest in an action can be denied permissive intervention for several reasons, including that the interests of the original litigants outweigh the concerns of the intervenor. By denying intervention, the trial court made an implied finding that one (or more) of these reasons applied. This implied finding is presumed correct. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) Dr. Forest does not so much as try to dispute it. Hence, we do not consider permissive intervention further.

---

[7]     In a single sentence, she states that, because she has an interest in the subject matter of the action, "it was error for the trial court to deny intervention by Forest, *whether mandatory or permissive*." (Italics added.) However, she offers no argument to support this assertion specifically with regard to permissive intervention. Moreover, the captions of her brief do not disclose any contention with regard to permissive intervention. (See Cal. Rules of Court, rule 8.204(a)(1)(B).)

Finally, the Ahn parties argue that "[t]he trial court's ruling should be affirmed . . . but not for the reasons given by the trial court." They ask us to hold that "the defense of the constitutionality of a statute is a public function reserved to the Attorney General." Dr. Forest retorts that the Ahn parties lack standing to raise this argument because it is based on the Attorney General's rights. Because we are affirming for the reason the trial court *did* give, we do not reach these arguments.

In sum, then, we conclude that the trial court did not err in finding that the Attorney General could adequately represent Dr. Forest's interest. It therefore did not err by denying her mandatory intervention. We so conclude regardless of whether the standard of review is de novo or abuse of discretion.

## III

## DISPOSITION

The order appealed from is affirmed. In the interests of justice, each side shall bear its own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

I concur:

MILLER
J.

[*Ahn v. Hestrin*, E073530]

Slough, J., Dissenting.

I think the majority take a far too narrow view of the interests at stake in this important case. I would recognize that Dr. Forest's particular interests give her an important perspective, which the majority's ruling will sideline. I would therefore reverse the trial court and direct it to allow Dr. Forest to intervene in the litigation.

A trial court must permit a person to intervene in an action if "[t]he person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties." (Code Civ. Proc., § 387, subd. (d)(1)(B), unlabeled statutory citations refer to this code; see also *Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1423-1424.) The purpose of allowing intervention is to promote fairness by involving all parties potentially affected by a judgment, and for that reason the provision should be liberally construed in favor of intervention. (*Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1504-1505.)

Since section 387, subdivision (d)(1)(B) is "in substance an exact counterpart to rule 24(a) of the Federal Rules of Civil Procedure," we generally give it the same meaning, force and effect as federal courts give the federal provision. (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 556.) In my view, that would

1

extend to reviewing de novo the denial of a motion for mandatory intervention. (See *Smith v. Marsh* (9th Cir. 1999) 194 F.3d 1045, 1049.)

In this case, there is no dispute Dr. Forest, who treats terminally ill patients, has an interest in the construction and constitutionality of the End of Life Option Act (EOLOA). (Health & Saf. Code, §§ 443-443.22.) Nor is there any dispute that the disposition of the lawsuit in the courts may impair or impede her ability to protect her interests. It is evident Dr. Forest has an important stake in the litigation. If the courts declare EOLOA unconstitutional, she will no longer be permitted to provide medical aid in dying. If she does so anyway, prosecutors could charge her with a criminal offense, potentially a felony.

More, as I described the last time this case came before us, EOLOA "heavily regulates the conditions under which an attending physician may prescribe an aid-in-dying drug. Before doing so, the physician must determine whether the patient is a qualified individual, has a terminal disease, has the capacity to make medical decisions, and has made a voluntary request using a form with required content. ([Health & Saf. Code,] § 443.5, subd. (a).) . . . If the physician determines the patient shows indications of a mental disorder, they must refer the patient for a mental health specialist assessment. ([Health & Saf. Code,] § 443.5, subd. (a)(1)(A)(i).) The physician must confirm the patient is making an informed decision by discussing the diagnosis and prognosis, potential risks and the probable result of ingesting the drug, the possibility they may obtain the drug but not take it, and other treatment options like comfort care, hospice

2

care, palliative care, and pain control. ([Health & Saf. Code,] § 443.5, subd. (a)(2)(A)-(E).) They must also discuss with the patient whether they're feeling coerced or unduly influenced to confirm the decision was not the result of coercion. ([Health & Saf. Code,] § 443.5, subd. (a)(4).)" (*People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 511-512, conc. & dis. opn. of Slough, J.) If the statute survives the plaintiffs' constitutional challenges, the courts may be required to construe those and other regulatory provisions in a manner that would affect Dr. Forest's ability to perform her job.

For all these reasons, Dr. Forest has a direct and obvious interest in ensuring EOLOA is upheld against plaintiffs' constitutional challenge and also in influencing how the courts interpret the provisions that govern her profession. The question we face is whether the district attorney or the Attorney General is an inadequate representative of her interests. (§ 387 (d)(1)(B).)

It's not difficult for a would-be intervener to meet that standard. Federal cases interpreting the nearly identical standard under rule 24 of the Federal Rules of Civil Procedure require only a minimal showing of differentiated interests. As the United States Supreme Court has explained, the inadequate representation requirement is "satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." (*Trbovich v. United Mine Workers* (1972) 404 U.S. 528, 538, fn.10.)

Federal courts "consider[] three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." (*Arakaki v. Cayetano* (9th Cir. 2003) 324 F.3d 1078, 1086.) It's not necessary for an intervenor to establish an actual difference in litigation strategy, "[i]t is sufficient for Applicants to show that, because of the difference in interests, it is likely that Defendants will not advance the same arguments as Applicants." (*Southwest Ctr. for Biological Diversity v. Berg* (9th Cir. 2001) 268 F.3d 810, 824 (*Southwest Ctr.*).)

Here, the district attorney, the Attorney General, and Dr. Forest share the same objective of protecting EOLOA from a court ruling that completely invalidates the law. But that isn't the end of the story. The district attorney and the Attorney General seek to demonstrate the legitimacy of the statute. However, the timing and legal theory on which they prevail is of little moment to them. By contrast, Dr. Forest seeks to preserve her own ability to conduct her practice as she sees fit, within the constraints of her professional responsibilities, and to provide her terminal patients with end of life treatment that reduces their pain and suffering. That means she has an interest in obtaining a quick resolution on the merits so she may assist her current patients secure in the knowledge that doing so is legal. As someone who is exposed to prosecution absent the protections of the law, it is important to Dr. Forest that the law prevails because it is judged to be

4

constitutional on the merits. Her role as a physician who is subject to the statute's regulatory provisions also means she has a specific interest in how the courts interpret those restrictions. In all these ways, Dr. Forest's interests diverge significantly from the interests of the district attorney and the Attorney General as well as from the individual patient who succeeded in intervening. (See *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca* (9th Cir. 1998) 152 F.3d 1184, 1190 ["because the employment interests of IBT's members were potentially more narrow and parochial than the interests of the public at large, IBT demonstrated that the representation of its interests by the named defendants-appellees may have been inadequate"].)

The divergence isn't just hypothetical. When the plaintiffs petitioned the California Supreme Court for review of our earlier decision that plaintiffs lacked standing, the intervenors, including Dr. Forest, asked the Court to reach the merits on the constitutionality of EOLOA. (Intervenors' Answer to Petition for Review.) They did so because a merits ruling in favor of the law would have resulted in a faster resolution of this case, and immediate certainty about the availability of aid in dying services in the future. By contrast, the Attorney General opposed having the Supreme Court review the merits, but instead sought to protect the narrow and possibly temporary victory on standing. (Attorney General's Answer to Petition for Review.) This divergence in actual litigation strategy is just one example, but it shows Dr. Forest clearly has gone well beyond satisfying the requirement that she show her interests diverge so much that "it is *likely* that Defendants will not advance the same arguments as Applicants." (*Southwest*

5

*Ctr.*, *supra*, 268 F.3d at p. 824, italics added.) It's not only likely that the district attorney and Attorney General will not advance the same arguments as Dr. Forest, or that they won't litigate with the same urgency, it's already happened. From this, I conclude the current parties do not adequately represent Dr. Forest and she's entitled to intervene as of right.

The majority rely on the "general presumption that a government entity is an adequate representative." (Maj. Opn. *ante*, at p. 10, citing *F.T.C. v. Johnson* (8th Cir. 2015) 800 F.3d 448, 452.) There are two problems with their reliance on this principle here. First, the presumption applies to a government entity that is "charged with the responsibility of representing the intervenor's interests." (*F.T.C. v. Johnson*, at p. 452.) In *F.T.C. v. Johnson*, a group of consumers were trying to intervene in a lawsuit brought by the Federal Trade Commission to protect consumers against unfair or deceptive trade practices. But the Federal Trade Commission is charged specifically with bringing enforcement actions to protect the interests of consumers. This entitled the agency to a presumption that they adequately represent the public. The Attorney General is an organization tasked with the general obligation to protect and enforce the laws of the State of California. It isn't their job to protect the legal interests of physicians or any other group of Californians interested in end of life care.

Second, as the cases applying the presumption acknowledge, even if it did apply here, "when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal

to it, the burden is comparatively light." (*Kleissler v. United States Forest Serv.* (3d Cir. 1998) 157 F.3d 964, 972.) I would conclude the presumption doesn't apply in this case, but if it did, Dr. Forest more than overcame it by establishing a significant and actual divergence in interests.[1]

I also believe the majority is wrong to follow the *F.T.C. v. Johnson* decision by holding a difference of litigation strategy does not overcome the presumption of adequate representation. (Maj. opn. *ante*, at p. 10.) If a difference in litigation strategy arises from a would-be intervenor's divergent interests, the law says intervention is mandatory. (*Southwest Ctr.*, *supra*, 268 F.3d at p. 824; *United States v. Oregon* (9th Cir. 1988) 839 F.2d 635, 638 ["We have held that in determining whether rights are being adequately represented, it is appropriate to examine whether existing parties' interests are such that they will make all of the arguments the applicants would make"].)

For all of these reasons, I would reverse the order denying intervention and direct the court to enter an order allowing Dr. Forest to intervene in this lawsuit.


SLOUGH         

J.

---

[1] The majority relies heavily on forfeiture to rule against Dr. Forest, repeatedly refusing to address arguments she raised in her reply brief in this court. I believe this to be inappropriate in a case of such public significance. Dr. Forest made these arguments in the trial court and the other parties are well aware of them. Forfeiture is discretionary and we can address any perceived unfairness by allowing supplemental briefing. By leaning on forfeiture so hard, the majority makes its own conclusions look brittle.