# United States Court of Appeals for the Federal Circuit

———————

**MITCHCO INTERNATIONAL, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, KENTUCKY OFFICE OF VOCATIONAL REHABILITATION, SOUTHERN FOODSERVICE MANAGEMENT, INC.,**
*Defendants-Appellees*

———————

2021-1556

———————

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00879-EGB, Senior Judge Eric G. Bruggink.

———————

Decided:  March 3, 2022

———————

ALAN GRAYSON, Orlando, FL, argued for plaintiff-appellant.

RICHARD PAUL SCHROEDER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., DOUGLAS K. MICKLE.

ANDREW J. SCHUMACHER, Winstead, P.C., Austin, TX, argued for defendant-appellee Kentucky Office of

Vocational Rehabilitation.   Also represented by PETER ANDREW NOLAN.

WALTER BRAD ENGLISH, Maynard, Cooper & Gale, PC, Huntsville, AL, for defendant-appellee Southern FoodService Management, Inc.   Also represented by EMILY J. CHANCEY, JON DAVIDSON LEVIN, JOHN ANDREW WATSON, III.

_____

Before MOORE, *Chief Judge*, DYK and CUNNINGHAM, *Circuit Judges.*

DYK, *Circuit Judge.*

Mitchco International, Inc. ("Mitchco") appeals a Court of Federal Claims decision in a post-award bid protest denying Mitchco's motion for judgment on the administrative record and granting the government's and other defendants' cross-motions for summary judgment.   *See Mitchco Int'l, Inc. v. United States*, 151 Fed. Cl. 537 (2020). We affirm.

BACKGROUND

I

In 2019, the government solicited bids for the provision of food and dining room operation services at the U.S. Army base located at Ft. Knox, Kentucky.   The government awarded the contract to the Kentucky Office of Vocational Rehabilitation ("KOVR").   The award is challenged by Mitchco.  Mitchco had previously been the subcontractor to KOVR and its predecessor under a contract awarded in 2015 (Solicitation No. W9124D-15-D-0026).   That contract was scheduled to expire in November 2019.  On October 29, 2019, the Army issued the solicitation at issue here (Solicitation No. W9124J-19-R-0018) for a follow-on contract (the "solicitation").

The solicitation called for a single, firm-fixed price, indefinite delivery, indefinite quantity contract to be awarded to the responsible offeror who represented the best value to the government. The solicitation required management of dining facility functions, including "food receiving and storage, food preparation, food serving, remote site feeding, grab n go (Pre-packaged Meals) and facility sanitation duties." J.A. 1000472. It called for a five-year ordering period, with a six-month extension option pursuant to Federal Acquisition Regulation ("FAR") 52.217-8. The agency designated the contract as set aside for small businesses. The contract was also subject to the Randolph-Sheppard Act of 1936 (the "RSA" or "R-SA"), which provides that "[i]n authorizing the operation of vending facilities on Federal property, priority shall be given to blind persons licensed by a State agency [(or 'SLA')]." 20 U.S.C. § 107(b).[1] Pursuant to the RSA, the solicitation advised that priority would "be given to the State Licensing Agency ('SLA')" if "the SLA [wa]s determined to be in the Competitive Range." J.A. 1000747.

KOVR, the Kentucky SLA, submitted a proposal, with Southern Foodservice Management, Inc. ("Southern") as its proposed subcontractor, replacing Mitchco. Mitchco and three other companies also submitted proposals. Of the five proposals received, the Army determined that three were eligible for award: KOVR, Mitchco, and a third company called Prosperitus Solutions. All three were determined to be in the competitive range (based on technical acceptability). On January 6, 2020, the Army informed

---

[1]    Vending facilities under the RSA include cafeterias on military bases like Ft. Knox. *See* § 107e(7); *Kansas ex rel. Kan. Dep't for Child. & Fams. v. SourceAmerica*, 874 F.3d 1226, 1231 (10th Cir. 2017) (citing *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 592 (6th Cir. 2014)).

Mitchco that although it was in the competitive range, as the SLA, KOVR would receive priority under the RSA. After KOVR, Mitchco had the lowest-priced technically-acceptable offer. The Army awarded the contract to KOVR on February 10, 2020.

## II

On February 13, 2020, Mitchco filed a small business size protest with the Army, challenging the award of the contract to KOVR on the grounds that KOVR was not a "small business concern," and therefore was not eligible to receive the award. On March 13, 2020, the Small Business Administration ("SBA") determined that KOVR was "other than a small business concern for the applicable size standard," J.A. 1003538, but did not issue a determination on whether KOVR was considered an SLA because the SBA "does not have the purview to determine if KOVR meets the exception under the SLA for award," J.A. 1003537, *i.e.*, it did not have authority to determine whether KOVR was entitled to the SLA preference.

Mitchco also filed two unsuccessful protests with the Government Accountability Office ("GAO") alleging, among other things, that the agency improperly evaluated KOVR's proposal and that KOVR violated the Procurement Integrity Act ("PIA").[2] The first protest was dismissed as premature because it was filed while post-award debriefing between the Army and Mitchco was ongoing. The second was rejected on the merits on June 9, 2020. *See In re Mitchco Int'l, Inc.*, B-418481.3, 2020 WL 4039018 (Comp. Gen. June 9, 2020). The Comptroller General determined that, among other things, Mitchco had "fail[ed] to state a

---

[2] As discussed below, Mitchco alleges that KOVR and Southern improperly sought or obtained proprietary information concerning Mitchco's performance on the incumbent contract.

legally or factually sufficient basis of protest" for its claim that KOVR and Southern violated the PIA. *Id.* at \*5.

Mitchco next filed a complaint with the Claims Court on July 17, 2020. Therein, Mitchco reasserted its allegations that the Army improperly awarded the contract to KOVR, and it also sought an order terminating the award and restraining the Army from allowing anyone but Mitchco to perform the contract as well as an award of bid preparation and proposal costs. KOVR and Southern intervened.

Relevant to this appeal, Mitchco alleged four different violations of federal procurement law: 1) the Army violated an SBA procurement regulation by refusing to terminate KOVR's contract after the SBA determined that KOVR did not qualify as a small business; 2) the Army's selection of KOVR's RSA proposal for the solicitation violated a Department of Defense ("DOD")-Department of Education ("DOE") Joint Statement of Policy requiring SLA offerors to "assign at least one blind person per military dining facility in a management role," J.A. 14; 3) KOVR and Southern violated the PIA by knowingly obtaining proprietary information about Mitchco; and 4) the Army failed to evaluate KOVR's proposal in accordance with the terms of the solicitation and applicable law.[3] Finding all of these claims lacked merit, the Claims Court denied injunctive or other relief on the grounds that Mitchco had not established that the award was unlawful or that irreparable injury would

---

[3]    Mitchco also alleged that KOVR misrepresented itself as an SLA because neither Kentucky nor the federal government properly designated KOVR as the SLA for the state, and that the Army violated the FAR by conducting discussions with and allowing proposal revisions from KOVR but not from Mitchco. Mitchco does not pursue those claims on appeal.

result if relief were not granted. This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

"This court reviews the trial court's determination on the legal issue of the government's conduct, in a grant of judgment upon the administrative record, without deference." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (first citing *Info. Tech. Applications Corp. v. United States*, 316 F.3d 1312, 1318–19 (Fed. Cir. 2003); and then citing *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000)). "That is, this court reapplies the 'arbitrary and capricious' standard of" the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), to the agency's decision. *Id.* (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

## I

We first address jurisdiction. Appellees argue that this case is moot because KOVR's contract under the solicitation was terminated by the government for cause on June 4, 2021 (after Mitchco filed its principal brief in this appeal).

## A

The events leading to the termination of the contract are as follows. During the period that Mitchco served as subcontractor under the pre-existing contract, the Army identified several deficiencies with performance of the contract. In order to address these deficiencies, in November 2019, KOVR proposed to the Army that it would replace Mitchco with Southern effective December 1, 2019. In response, Mitchco filed a lawsuit against the Commonwealth of Kentucky in state court alleging that KOVR breached a contract with Mitchco by replacing Mitchco with Southern, and seeking injunctive relief.

On November 26, 2019, the Kentucky state court granted Mitchco's request for a temporary restraining order barring KOVR from replacing Mitchco with Southern on the existing contract. On March 31, 2020, the state court converted the restraining order to a permanent injunction, finding that KOVR's unilateral selection of Southern to replace Mitchco as the subcontractor under the existing contract would violate the Kentucky Model Procurement Code ("KMPC"). It is not clear on what basis the Kentucky state court thought its ruling was consistent with federal law. On April 2, 2020, the state court clarified that the permanent injunction also applied to any new contract. Thus, KOVR was barred from utilizing Southern as the subcontractor under the solicitation involved here.

Mitchco alleges that at this point, KOVR "stopped paying Mitchco," Appellant's Reply Br. at 28 n.15 (emphasis omitted), and that, as a result, Mitchco could not "continue to perform," J.A. 1003682. When Mitchco ceased performance and KOVR was unable to utilize Southern to perform the work because of the state court injunction, the Army terminated the contract for cause.

B

The mootness doctrine arises from the case or controversy requirement of Article III of the U.S. Constitution. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). An appeal is moot, and should be dismissed, when "it is impossible to grant the appellant 'any effectual relief whatever.'" *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1076 (Fed. Cir. 2021) (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996)). "The party arguing that a case has become moot 'bears the burden of coming forward with the subsequent events that have produced that alleged result.'" *Hyosung TNS Inc. v. Int'l Trade Comm'n*, 926 F.3d 1353, 1357

(Fed. Cir. 2019) (quoting *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993)).

There is no question that the injunctive relief Mitchco seeks is moot insofar as Mitchco seeks an order enjoining KOVR's performance of the contract, since the Army has already terminated KOVR's contract. *See Veterans Contracting Grp. v. United States*, 743 F. App'x 439, 440 (Fed. Cir. 2018) (non-precedential).

However, Mitchco also seeks an order directing the Army to re-evaluate the proposals and to award the contract to Mitchco. Although the government terminated the contract for cause, Mitchco argues that the Army has not formally cancelled the solicitation. Further complicating the issue, when asked about the status of the solicitation at oral argument, the government offered that it had been "constructively cancelled." Oral Arg. at 27:59–28:00. We ordered supplemental briefing on the status of the solicitation, including whether the government intended to formally cancel the solicitation. In its supplemental brief, the government reaffirmed that the solicitation has been "constructively cancelled" and made clear that the Army had no intent to formally cancel the solicitation because it "does not believe that the Federal Acquisition Regulation (FAR) requires a formal cancellation under the facts of this case." Gov't Suppl. Br. at 2–3.

At the same time, the government advises that "the Army does not intend to rely on the challenged procurement" to fulfill the food service requirements of the contract, "and is exploring other options to meet its needs." *Id.* at 3. The government further explains that "since the contract was awarded to KOVR in February 2020, there has been an epic intervening pandemic that . . . has resulted in new COVID-related requirements, and the Army is determining their scope and applicability to this matter." *Id.* at 4. In the meantime, the Army is obtaining the necessary

food services through Southern, by way of a short-term bridge contract.

Accepting this information as true, we conclude that Mitchco, if successful, would be entitled to bid preparation and proposal costs—a situation that renders the case not moot.[4]

C

Under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104–320, § 12, 110 Stat. 3870, 3874, the Claims Court can award bid preparation and proposal costs.  28 U.S.C. § 1491(b)(2) ("[T]he court[] may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief *shall be limited to bid preparation and proposal costs*." (emphasis added)).  Those costs are defined by regulation as "costs incurred in preparing, submitting, and supporting bids and proposals (whether or not solicited) on potential [g]overnment or non-[g]overnment contracts."  48 C.F.R. § 31.205-18(a).

The statute thus makes clear that bid preparation and proposal costs are a primary remedy for violations of procurement law.  Indeed, there was a time in the history of bid protests when the *only* remedy available for bid protests was bid preparation and proposal costs.  *See Impresa*, 238 F.3d at 1331.  In *Impresa*, we traced the "history of judicial review of government contracting procurement decisions."  *Id.*  We explained that under the pre-1996 "implied contract" theory, the Claims Court and its predecessor's review of bid protest cases was "far narrower than district court review under the APA, and an aggrieved bidder *was*

---

[4]    We express no opinion as to whether the "constructive cancellation" of the solicitation would preclude injunctive relief if Mitchco prevailed on the merits.

*typically limited to monetary relief such as bid preparation costs." Id.* (emphasis added).

The government recognizes that bid preparation and proposal costs may be recovered in bid protest cases, but argues that the constructive cancellation of the solicitation bars the recovery of such costs. We disagree. The fact that the solicitation was "constructively cancelled" after it was awarded to KOVR does not preclude a claim that the award was unlawful in the first place, just as the completion of a contract does not preclude an award for bid preparation and proposal costs. *See, e.g., Pacificorp Cap., Inc. v. United States*, 852 F.2d 549, 550 (Fed. Cir. 1988) ("Regardless of whether the procurement has already been completed, section 759(f)(5)(C) expressly permits the [General Services Board of Contract Appeals] to grant a successful protester an award of protest and bid preparation costs. The availability of such relief is enough to maintain this as a 'live' controversy.").[5]

Having thus determined that the case is not moot, we turn now to the merits.

## II

## A

Mitchco first argues that because the solicitation was set aside for small businesses, the Army violated an SBA

---

[5]    The case the government relies on in support of its proposition, *Glenn Defense Marine (ASIA), PTE LTD. v. United States*, 469 F. App'x 865 (Fed. Cir. 2012) (non-precedential), is factually inapposite. In that case, and the case it relies on, *Gibraltar Industries, Inc. v. United States*, 726 F.2d 747 (Fed. Cir. 1984), the protestor was ultimately awarded the contract it was protesting and therefore its bid preparation and proposal costs were not wasted. Mitchco was never awarded the contract at issue here.

procurement regulation by not cancelling the award of the contract to KOVR after the SBA sustained Mitchco's size protest against the award and KOVR failed to appeal that decision. The SBA regulation provides that if a contracting officer for a small business contract receives a determination by the SBA that a contract awardee is "not an eligible small business for the procurement in question," and the awardee does not appeal that determination, "the contracting officer shall terminate the award." 13 C.F.R. § 121.1009(g)(2)(i).

Here, the solicitation stated both that the contract was a small business set aside and that it was subject to the SLA preference under the RSA. The language of the solicitation regarding the SLA preference was explicit. It stated that "[t]he priority established by the R-SA applies to this acquisition," J.A. 1000755, and further stated that if the SLA "is determined to be in the Competitive Range[,] then the SLA will be afforded the priority as delineated in the R-SA," J.A. 1000747. Any ambiguity was resolved in the pre-proposal questions and answers. A prospective bidder asked: "As a small business, we cannot afford to spend time and resources drafting and submitting a proposal if there is not a fair opportunity to receive the award due to the advantage given to the SLA . . . . How will the agency determine the competitive range?" J.A. 1000893. In response, the Army clarified that "[i]f the [SLA] is determined to be in the Competitive Range, then the SLA will be afforded the priority as delineated in the R-SA." *Id.* (internal quotation marks and citation omitted). Mitchco was thus aware of the priority afforded the SLA notwithstanding the small business set-aside and did not protest the terms of the solicitation prior to bid submission. It therefore cannot challenge its applicability now. *See Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 759, 766 (Fed. Cir. 2021) (citing *Blue & Gold, Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007)).

In any event, the Claims Court determined that 13 C.F.R. § 121.1009(g)(2)(i), concerning small business entitlement, did not apply to KOVR because it was entitled to an SLA preference. *Mitchco*, 151 Fed. Cl. at 545. The Comptroller General has similarly concluded that the specific provisions of the RSA take precedence over general provisions for small businesses. *See In re Intermark, Inc.*, B-290925, 2002 WL 31399028, at *2 (Comp. Gen. Oct. 23, 2002). So too, in *NISH v. Cohen*, 247 F.3d 197, 205 (4th Cir. 2001), the Fourth Circuit held that the RSA, as the more specific statute dealing explicitly with the issue of contracting priorities in relation to the operation of cafeterias on federal property, governs over a statute of general applicability such as the Javits Wagner O'Day Act ("JWOD"), which gives preference for the severely disabled. *Accord Tex. Workforce Comm'n v. USDE*, No. EP-17-CV-00026-FM, 2018 U.S. Dist. LEXIS 232710, at *26 (W.D. Tex. Mar. 28, 2018); *Automated Commc'n Sys. v. United States*, 49 Fed. Cl. 570, 577–78 (Ct. Cl. 2001).

Finally, in *PDS Consultants, Inc. v. United States*, we similarly concluded that the specific requirements of the Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109-461, 120 Stat. 3403, 3431–35 (2006) ("VBA")—which "requires the Department of Veterans Affairs ('VA') to consider awarding contracts for prescription eyewear based on competition restricted to veteran-owned small business[es]" before procuring such eyewear from any other source (*i.e.*, to perform a "Rule of Two" analysis)—trumped the general provisions of the JWOD (just discussed in the preceding paragraph). 907 F.3d 1345, 1348, 1357–58 (Fed. Cir. 2018); *see id.* at 1358 ("While the JWOD applies to all agencies of the federal government, the VBA applies only to VA procurements and only when the Rule of Two is satisfied.").

We agree that the Army's treatment of the RSA as trumping the small business provision was not unlawful

and, even if it were, Mitchco's failure to protest the solicitation prior to the close of bidding bars relief.

B

Mitchco next argues that the Army "violated procurement law by making award to KOVR because KOVR's proposal fails to assign at least one blind person, per military dining facility, in a management role." Appellant's Br. at 17. In its proposal, KOVR selected Ms. Fay Autry as the Licensed Blind Vendor, giving her the role of manager of operations on the contract and responsibility for ensuring contract compliance. Because the solicitation involves servicing multiple dining facilities, however, Mitchco argues that KOVR's proposal was in violation of "Section 848 of the National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-63, and the resulting Joint Statement of Policy (to which the Department of Defense was a signatory)." *Id.* at 17–18. According to Mitchco, the Joint Statement of Policy requires "that each SLA offeror propose to 'assign at least one blind person *per military dining facility* in a management role,'" and KOVR's proposal did not satisfy that requirement. *Id.* at 18 (quoting 81 Fed. Reg. 36,506 (June 7, 2016) (proposed rule) (emphasis added)).

The Claims Court correctly rejected this claim because the RSA controls, and there is nothing in the RSA that requires a blind person at each facility. "In the absence of any specific legal requirement that blind persons had to be engaged at all locations, it was not unreasonable for the Army to find that KOVR satisfied the more general R-SA requirements." *Mitchco*, 151 Fed. Cl. at 548. The Joint Statement of Policy upon which Mitchco relies has no binding legal effect. It states that "[r]egulations are needed to implement the policy agreements reached" therein. J.A. 1002549. In a 2007 memorandum, the DOD recognized that the Joint Statement of Policy "'should not be cited in individual solicitations until it is implemented in

complementary regulations' by DOE and DOD." *Mitchco*, 151 Fed. Cl. at 547 (quoting Memorandum from the DOD on Applicability of the RSA to Military Dining Facilities, Shay D. Assad, Dir. of Def. Procurement and Acquisition Pol'y to Dirs. of Def. Agencies (Mar. 16, 2007)). Such regulations were never adopted. In the spring of 2019, the DOD published a rule that withdrew the proposed regulation without taking further action, after DOE notified the DOD that the 2006 Joint Policy Statement "no longer reflect[ed] the position of the DOE." *Id.* at 548 (quoting Department of Defense, *Food Services for Dining Facilities on Military Installations RIN: 0750-A178* (Spring 2019)).

We thus agree with the Claims Court that there is no legal requirement that blind persons had to be engaged at all service locations, and that it was not "contrary to law" for the Army to select KOVR's RSA proposal for the solicitation.

C

Mitchco next alleges that KOVR and Southern violated the PIA, 41 U.S.C. § 2102, making KOVR ineligible to receive the award. The PIA prohibits disclosing or obtaining "contractor bid or proposal information" under certain circumstances. § 2102(a)(1), (b). The theory is that KOVR and Southern improperly sought or obtained proprietary information concerning Mitchco's performance of the 2015 contract, for which Mitchco served as subcontractor, and that KOVR used that information in preparing its bid.

The relevant statute provides:

(a) Prohibition on Disclosing Procurement Information.—

(1) In general.—

Except as provided by law, a person described in paragraph (3) shall not knowingly disclose contractor bid or proposal information or source

selection information before the award of a Federal agency procurement contract to which the information relates.

(2) Employee of private sector organization.—

In addition to the restriction in paragraph (1), an employee of a private sector organization assigned to an agency under chapter 37 of title 5 shall not knowingly disclose contractor bid or proposal information or source selection information during the 3-year period after the employee's assignment ends, except as provided by law.

(3) Application.—<u>Paragraph (1) applies to a person that</u>—

(A)

(i)   is a present or former official of the Federal Government; or

(ii)  is acting or has acted for or on behalf of, or who is advising or has advised the Federal Government with respect to, a Federal agency procurement; and

(B)  by virtue of that office, employment, or relationship has or had access to contractor bid or proposal information or source selection information.

(b) Prohibition on Obtaining Procurement Information.—

<u>Except as provided by law, a person shall not knowingly obtain contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates</u>.

§ 2102(a), (b) (emphasis added).

16                    MITCHCO INTERNATIONAL, INC. v. US

The Claims Court held that § 2102(a)(3) effectively defines the term "person" in § 2102(b), with the result that "PIA violation claims can only be [] brought against present or former officials of the Federal Government or an advisor to the Federal Government with respect to a Federal agency procurement." *Mitchco*, 151 Fed. Cl. at 548 (citing § 2102(a)(3)). Since neither KOVR nor Southern falls into that category, the Claims Court determined that there could be no PIA violation. *Id.* at 548–49. Mitchco, on the other hand, argues § 2102(a)(3) does not define person for purposes of § 2102(b) but only for purposes of § 2102(a)(1), and § 2102(b) is the provision alleged to be violated here. At least one district court has agreed with Mitchco's interpretation. *See United States v. Kuciapinski*, 434 F. Supp. 3d 939, 944–46 (D. Colo. 2020). *But see GEO Grp., Inc. v. United States*, 100 Fed. Cl. 223 (2011). We need not decide that issue, as we find that Mitchco's PIA claim fails for an independent reason: the information it alleges was obtained or that was sought does not qualify as "contractor bid or proposal information." FAR 3.104-3(b).

The FAR defines "[c]ontractor bid or proposal information" to mean:

> any of the following information submitted to a Federal agency as part of or in connection with a bid or proposal to enter into a Federal agency procurement contract, if that information has not been previously made available to the public or disclosed publicly: [listing information such as "[c]ost or pricing data"]

FAR 3.104-1 (emphasis added). Mitchco alleges that several types of cost or pricing data information were improperly obtained by Southern and used by KOVR in preparing its bid. As Mitchco appears to concede, however, all of the documents pertain to the incumbent contract, which as the prime contractor, KOVR was authorized to possess. *See* 41 U.S.C. § 2107(1), (2) (providing a safe harbor covering the

receipt of information by persons authorized to receive that information).  GAO and the Claims Court have routinely held that this type of information is not subject to the PIA. *See, e.g.*, *In re S & K Aerospace, LLC,* B-411648, 2015 WL 7348967, at *4 (Comp. Gen. Sept. 18, 2015) ("[T]he release of information regarding a prior incumbent contract does not meet [the PIA's] definition." (citing *In re Eng'g Support Pers., Inc.*, B-410448, 2014 WL 7967482, at *3 (Comp. Gen. Dec. 24, 2014))); *id.* ("[T]he information at issue here—cost figures in the [independent government cost estimate] that 'were derived from . . . costs on the current [Price Breakout Worksheets]' from incumbent contracts or task orders, including one being performed by the protester—is not 'contractor bid or proposal information'; rather it is information that was generated during the performance of a contract or task order.").  We agree with those decisions.

We thus conclude that Mitchco has not established a PIA violation.[6]

D

Finally, Mitchco claims that the Army erred in its evaluation of KOVR's proposal and in its responsibility determination.  In reviewing an agency's evaluation of a proposal, we have held that the test is whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1333 (quoting *Latecoere Int'l, Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)); *see also Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) ("The court is not empowered to substitute its judgment for that of the agency." (quoting *Citizens to*

---

[6]    Because Mitchco failed to establish a PIA violation, its claim that the contracting officer violated the FAR for failure to investigate the reported violations under FAR 3.104-7 also fails.

*Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971))).

Mitchco argues that there is evidence that Southern would not perform the contract according to its terms. According to Mitchco, this should have rendered KOVR's proposal "Technically Unacceptable," disqualifying it. Appellant's Br. at 28 (citing J.A. 1000466–69). Mitchco does not demonstrate that KOVR's proposal proposed to violate the contract terms during performance. *See, e.g.*, *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1330 (Fed. Cir. 2011) (holding that an agency is "entitled to rely on" an offeror's certification "that it meets the technical requirements of a proposal" except when "a proposal, *on its face*, [] lead[s] an agency to the conclusion that an offeror could not and would not comply with the [applicable requirement]" (citation omitted)); *PAI Corp. v. United States*, 614 F.3d 1347, 1352 (Fed. Cir. 2010) ("To demonstrate that [the agency's procurement decision was] arbitrary or capricious, a protester must identify 'hard facts'; a mere inference or suspicion of an actual or apparent [violation] is not enough." (quoting *C.A.C.I., Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983))).

Mitchco also asserts that because KOVR and Southern did not have a signed written contract, Southern was free to walk away from the contract at any time. But the solicitation did not require that KOVR and Southern have a signed contract; it only required offerors to submit a subcontracting plan, which KOVR did.

There is thus no merit to these claims, and we will not delve any further into the "minutiae of the procurement process" by second guessing the agency's evaluation of

KOVR's proposal. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996).[7]

### CONCLUSION

In sum, we conclude that we have jurisdiction over Mitchco's claims for bid preparation and proposal costs and affirm the decision of the Claims Court on the merits.

**AFFIRMED**

---

[7]    Because we conclude that Mitchco has not shown success on the merits, we need not address its claim of irreparable injury. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004) (providing standard for permanent injunction).