# United States Court of Appeals for the Federal Circuit

---

**GLOBAL K9 PROTECTION GROUP, LLC, MICHAEL STAPLETON ASSOCIATES, LTD.,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES, AMERICAN K-9 DETECTION SERVICES, LLC,**
*Defendants-Appellees*

**v.**

**K2 SOLUTIONS, INC.,**
*Defendant-Appellant*

---

2024-1842

---

Appeal from the United States Court of Federal Claims in Nos. 1:23-cv-00210-RTH, 1:23-cv-00311-RTH, Judge Ryan T. Holte.

---

Decided: May 14, 2026

---

WALTER BRAD ENGLISH, Maynard Nexsen PC, Huntsville, AL, argued for plaintiff-appellee Global K9 Protection Group, LLC. Also represented by EMILY J. CHANCEY, HOLDON GUY, TAYLOR REIGN HOLT.

STEVEN JOHN GILLINGHAM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

TIMOTHY HURLEY, Nelson Mullins Riley & Scarborough LLP, Baltimore, MD, argued for defendant-appellant K2 Solutions, Inc. Also represented by DAVID YU-HUNG YANG, Washington, DC.

RYAN BRADEL, Ward & Berry PLLC, Tysons, VA, for plaintiff-appellee Michael Stapleton Associates, Ltd. Also represented by CHELSEA ANN CRUZ, PETER TYSON MARX; NICHOLAS PERRY, Washington, DC.

DANIEL J. STROUSE, Cordatis LLP, Arlington, VA, for defendant-appellee American K-9 Detection Services, LLC. Also represented by JOSHUA SCHNELL.

_____

Before DYK, HUGHES, and STOLL, *Circuit Judges.*

DYK, *Circuit Judge.*

Appellant K2 Solutions, Inc. ("K2") appeals from a Court of Federal Claims ("Claims Court") decision denying its motion to intervene in a bid-protest case.

The United States Postal Service ("USPS") awarded a contract to K2 to provide canine explosive-detection services for screening air cargo. On February 13, 2023, Global K9 Protection Group ("Global K9") filed a bid-protest complaint at the Claims Court, alleging that the USPS arbitrarily and irrationally evaluated Global K9's bid and made a flawed best-value decision. The complaint was filed under seal, but Global K9 provided K2 with pre-filing notice of the complaint and filed a redacted version of the complaint on the public docket, both of which were required

under the Claims Court's rules.  R. Ct. Fed. Cl. app. C §§ 2(d), 6(b).  K2 elected not to intervene.

Several months later, on July 7, 2023, Global K9 filed an amended complaint under seal, adding new allegations that K2 materially misrepresented its capabilities to win its contract award.  Contrary to the requirements of the protective order and the Claims Court rules, Global K9 did not file a redacted public version on the public docket.  Based on the alleged misrepresentation, on December 27, 2023, Global K9 secured judgment on the administrative record that included an injunction requiring the USPS to disqualify K2 from performing the contract.

K2 learned of the injunction on December 28, 2023, and moved to intervene on January 10, 2024.  Shortly thereafter, and before the Claims Court ruled on intervention, the USPS terminated K2's contract for default, citing alleged ongoing performance deficiencies and the Claims Court's findings in the bid-protest proceeding.  With K2's contract already terminated, the Claims Court concluded that intervention was moot, and, in the alternative, untimely.

We conclude that the case is not moot.  With regard to timeliness, the failure of Global K9 to publicly file redacted versions of sealed documents was contrary to the rules of the Claims Court and the right of public access to court filings.  Nonetheless, we agree with the Claims Court that K2's motion to intervene was untimely, and we affirm.

### BACKGROUND

The USPS solicited bids to procure canine explosive-detection services for screening air cargo in February 2022.  Both Global K9 and K2 responded to the solicitation, bidding on multiple regional "clusters."  K2 won a five-cluster award, three of which overlapped with Global K9's unsuccessful bid.

On February 13, 2023, Global K9 filed a bid-protest complaint at the Claims Court under seal.  At the outset,

Global K9 sought and was granted a protective order allowing the parties to file under seal any document containing protected information, defined as "information that must be protected to safeguard the competitive process, including source selection information, proprietary information, and confidential information." Proposed Protective Order at 1, *Global K9 Prot. Grp., LLC v. United States*, No. 23-cv-210 (Fed. Cl. Feb. 13, 2023), Dkt. No. 4-1. The protective order followed the "Form 8 Protective Order in Procurement Protest Cases," a standard sample order published by the Claims Court in an appendix to its rules. *See* R. Ct. Fed. Cl. app. of forms, Form 8 ("Form 8"). The order required a filing party to promptly propose a redacted version of any document filed under seal to the other parties and to file an agreed-upon redacted version on the public docket.

As required under the Claims Court's rules, Global K9 served K2 with a pre-filing notice of its original complaint. The original complaint alleged that the USPS arbitrarily and irrationally evaluated Global K9's bid and made a flawed best-value decision. It did not allege misrepresentation by K2. K2 elected not to intervene at that time and instead to rely on the government to protect its interests.

On July 7, 2023, Global K9 filed an amended complaint under seal, adding new allegations that K2 had misrepresented its performance history and capabilities when bidding for the contract and seeking cancellation of the contract. However, Global K9 did not provide a copy of the amended complaint to K2 or file on the public docket a redacted version of the amended complaint. Although K2 was aware that an amended complaint had been filed, it asserts that it was unaware that the amended complaint alleged misrepresentation by K2.

On the same day that it filed its amended complaint, Global K9 also filed a motion for judgment on the administrative record ("MJAR"), seeking to enjoin the USPS from

proceeding with contractual performance of the clusters sought by Global K9, to require the USPS to reevaluate Global K9's bids, and to disqualify K2 from competition. Contrary to the Claims Court's rules, this document was also not filed on the public docket until March 2024. The government filed a sealed cross-motion for judgment on the administrative record, arguing that Global K9 "fail[ed] to demonstrate that K2 should be disqualified or that USPS's best value determination should be changed as a result," seeking dismissal of Global K9's bid protest. Cross-Motion for Judgment on the Administrative Record at 23, *Global K9 Prot. Grp., LLC v. United States*, No. 23-cv-210 (Fed. Cl. Aug. 4, 2023), Dkt. No. 46.

On December 27, 2023, in a publicly available order with minimal redactions, the Claims Court found that K2's bid contained a material misrepresentation and granted an injunction disqualifying K2 from performance.[1] The USPS provided a redacted copy of the Claims Court's order to K2 the next day. Having seen the order, K2 moved to intervene as a defendant on January 10, 2024, proposing to move, once joined, to dissolve or to reconsider the injunction. The USPS and Global K9 opposed K2's motion.

Meanwhile, on July 7, 2023, the USPS had contacted K2 concerning alleged performance deficiencies under the contract and to require corrective action. If K2 did not submit a satisfactory plan for corrective action, the USPS stated that it would "reserve[] all rights under the Contract." App'x 555.[2]  On January 24, 2024, the USPS informed K2 of its decision to terminate the contract for default, citing uncorrected performance deficiencies and relying specifically on the Claims Court misrepresentation finding in Global K9's bid-protest proceeding as "a further

---

[1]     None of these redactions was material.

[2]     Citations to "App'x" refer to the Corrected Appendix filed by the appellant in this case.  Dkt No. 64.

basis for [the] termination decision." App'x 912.  By February 29, 2024, the USPS awarded to Global K9 and another contractor the clusters formerly awarded to K2.

Thereafter, on April 11, 2024, the Claims Court denied K2's motion to intervene in this case, determining that the termination of the contract for default made K2's proposed intervention moot (relying on our decision in *Mitchco International, Inc. v. United States*, 26 F.4th 1373 (Fed. Cir. 2022)) and further that K2's motion was untimely.

K2 timely appealed the denial of its motion to intervene.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).  After filing this appeal, K2 filed a complaint in the Claims Court, alleging that the USPS's termination of the K2 contract for default was pretextual and in bad faith and seeking to convert the termination for default into a termination for convenience.  Complaint at 24, *K2 Sols., Inc. v. United States*, No. 1:25-cv-133 (Fed. Cl. Jan. 23, 2025), Dkt. No. 1.  That case remains pending.

DISCUSSION

I

We first consider the question of mootness.  Ordinarily, an injunction against performance of an independently terminated contract is moot.  *See Mitchco*, 26 F.4th at 1378.  The Claims Court determined that K2's proposed intervention was moot because the contract awarded to K2 had been terminated for default.  Also, K2 has represented at oral argument that it does not seek to overturn the cancellation of the contract.

However, in the related Claims Court proceeding, K2 continues to contest the USPS's termination for default, arguing that the default termination should be treated as a termination for convenience.  Complaint at 36–37 ¶¶ 160–61, *K2 Sols., Inc. v. United States*, No. 1:25-cv-133 (Fed. Cl. Jan. 23, 2025).  In the course of that proceeding, the issue of K2's alleged misrepresentation continues to be a live

issue. The USPS relied on the Claims Court's finding of "material misrepresentations" by K2 in this case as "a further justification for terminating the Contract for default." App'x 912. In that context, K2 disputes the determination of misrepresentation. Should K2 succeed in that challenge, it may recover costs under a termination-for-convenience theory. *See Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 768 (Fed. Cir. 1987).

Vacating the Claims Court's finding of misrepresentation in this case would remove one of the USPS's cited justifications for default, which would benefit K2's ongoing attempt to convert the termination for default to a termination for convenience. That is enough to prevent mootness. *See Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1082–83 (Fed. Cir. 2025) (holding intervenor's appeal not moot where the court "[could not] rule out the possibility" that vacatur of injunction could benefit the intervenor in a separate pending proceeding).

## II

We next turn to the timeliness of intervention. K2 claims that it is entitled to intervene as of right. *See* R. Ct. Fed. Cl. 24(a). Rule 24(a) states:

> On timely motion, the court must permit anyone to intervene who:
>
> > (1) is given an unconditional right to intervene by a federal statute; or
> >
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

*Id.* In bid-protest cases, incumbent contract awardees typically have an interest in the awarded contract under R. Ct. Fed. Cl. 24(a)(2) that suffices to enable intervention as of right. *See, e.g.*, *Winston-Salem Indus. for the Blind, Inc. v. United States*, 144 Fed. Cl. 644, 645–46 (2019); *Ernst & Young, LLP v. United States*, 136 Fed. Cl. 475, 495 (2018). "Timeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973).[3]

We evaluate timeliness of intervention under a three-factor test: (1) "the length of time during which the would-be intervenor[s] actually knew or reasonably should have known of [their] right[s]"; (2) "whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor[s] by denying intervention"; and (3) "existence of unusual circumstances militating either for or against a determination that the application is timely." *Belton Indus., Inc. v. United States*, 6 F.3d 756, 762 (Fed. Cir. 1993) (alterations in original) (citation omitted). The Claims Court concluded that none of these factors weighed in favor of intervention. We review a trial court's timeliness-of-intervention determination for abuse of discretion. *Id.* at 760.

A

Under the first *Belton* factor, we consider the length of time between (1) when K2 knew or reasonably should have known of the need to intervene to protect its interests and (2) when the intervention motion was filed. *Id.* at 762.

The Claims Court concluded that K2 knew or should have known when it received pre-filing notice of the original complaint in February 2023 that "its contract award and all associated rights and interests were at risk."

---

[3] K2 also invokes permissive intervention under Rule 24(b), which also requires a "timely motion." R. Ct. Fed. Cl. 24(b).

App'x 27.  K2 argues that, based on the contents of the original complaint, it had no reason to doubt that the USPS would defend its award process and protect K2's contract award.  In this respect, we agree with K2.  We presume that proposed intervenors "whose specific litigation goals identically match those of an existing party" are adequately represented.  *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1318 (Fed. Cir. 2012).  At the start of the bid protest, the specific litigation goals of the USPS and K2 were both to defend the adequacy of the USPS's evaluation and the decision to award a contract to K2.  Whatever the threat to K2's interest in the contract, there was no reason to doubt an "existing part[y]," that is, the government, would "adequately represent that interest."  *See* R. Ct. Fed. Cl. 24(a)(2).

When Global K9 amended its complaint to add misrepresentation allegations, K2's interests diverged from those of the USPS.  At that point, the question was no longer whether the USPS acted properly in evaluating the bids but whether K2 acted properly during the bidding process.  K2 could not at that point rely on the USPS to represent its interests.

The question is when K2 became aware, or should have become aware, of the misrepresentation allegation.  When a non-party's interests are initially protected, the "most important circumstance relating to timeliness" is whether the intervenor seeks to intervene as soon as it is evident that its interests "'would no longer be protected' by the parties in the case."  *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279–80 (2022) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)); *McDonald*, 432 U.S. at 390, 394.

There is no suggestion that K2 knew of the claims of misrepresentation before the release of the Claims Court's opinion on December 27, 2023.  Global K9's misrepresentation allegation first appeared in the amended complaint.  It

is undisputed that the amended complaint, MJAR briefing, and supporting documentation were filed under seal and without redacted versions made available on the public docket. In this respect, Global K9's actions were doubly improper.

First, the redactions to the amended complaint were unjustified. The Claims Court Rules permit a plaintiff to seal a complaint containing "confidential or proprietary information" that "plaintiff seeks to protect . . . from public scrutiny." R. Ct. Fed. Cl. app. C § 4. The Form 8 protective order, which appears to be commonly used in bid-protest cases, defines "[p]rotected information" as "information that must be protected to safeguard the competitive process, including source selection information, proprietary information, and confidential information." Form 8 § 1. But both the Claims Court's rules and the Form 8 order failed to adequately define what constitutes "confidential" information entitled to be redacted.

While bid protests frequently implicate proprietary or confidential information that parties to such proceedings have legitimate interests in protecting, we have consistently recognized that the public has a "highly significant" and "longstanding" right of access to "'inspect and copy public records and documents, including judicial records and documents.'" *DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1369 (Fed. Cir. 2021) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)); *In re United States*, 166 F.4th 1001, 1011 (Fed. Cir. 2026). There is a "strong presumption in favor of a common law right of access to documents filed in court proceedings." *In re United States*, 166 F.4th at 1011. Only a "strong justification" shown by a party wanting to restrict access may overcome the presumption of access. *DePuy*, 990 F.3d at 1369–70. Public access to complaints, in particular, "is almost always necessary if the public is to understand a court's decision." *Id.* at 1370 (quoting *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013)). A

complaint "must generally be disclosed to the public unless there are compelling countervailing circumstances." *Id.*

We and the Court of International Trade ("CIT") have recently addressed similar issues of public access in connection with the International Trade Commission's ("ITC's") sealing practices and found them irreconcilable with the public right of access. *In re United States*, 166 F.4th at 1004. In that case, agreeing with the CIT, we held improper the ITC's policy of automatically designating all responses to questionnaires as confidential. *Id.* at 1016. We also held that information could not properly be redacted if it was publicly available, disclosed in generalized form (protecting against disclosure of specific information), or if its disclosure would not cause significant competitive injury. *Id.* The Claims Court, like the CIT, has an obligation to ensure that the public right of access is vindicated. Bid-protest cases are not private litigation immune from the public right of access. The public interest in understanding the course of government-contract litigation is compelling.

To be sure, in the bid-protest context, material may be properly treated as confidential if its discovery would cause substantial competitive injury, interfere with the confidentiality of the bidding process, or impair national security. But the protective order and the Claims Court's rules do not adequately define materials entitled to such confidential treatment. In this case, material was redacted without justification. Here, for example, the redacted version blacks out the quotations from K2's proposal that constituted the alleged misrepresentation. The Claims Court quoted the same language without redaction in its public order granting judgment on the administrative record.

Second, quite apart from the improper redactions, Global K9's actions were also contrary to the Claims Court's rules requiring any sealed filing to be made publicly available. R. Ct. Fed. Cl. app. C § 6. The party filing

under seal must "promptly" propose a redacted version to the other parties and publicly file the redacted version within two business days. Form 8 § 12; R. Ct. Fed. Cl. app. C § 6. As Global K9 did not file a publicly available redacted version as required, and the Claims Court did not enforce the requirement, K2 had no actual notice of the misrepresentation allegations against it until the Claims Court's December 2023 opinion disqualifying it from performing its awarded contract.

We next inquire whether these improper actions by Global K9 excused K2's failure to earlier file a motion for leave to intervene. K2 admits that it was "tracking the docket." App'x 129, 61:17–18. The docket showed that Global K9 filed an amended complaint and a motion for judgment on the administrative record in July 2023. By tracking the docket, K2 would have known that the original complaint, on which it based its decision not to intervene, had been superseded and that Global K9 had failed to promptly file a public version as required. K2 did not act to determine what the contents of those filings were by moving to compel the filing of a redacted version. Had it done so, K2 would have learned of the misrepresentation allegations shortly after Global K9 filed the amended complaint on July 7, 2023, and could have moved to intervene at that time. The amended complaint, even with its improper redactions, stated that "K2 should be disqualified from this competition due to its material representation about its past performance" and sought cancellation of the contract, which would have explicitly alerted K2 of the misrepresentation allegation against it and the requested relief. App'x 585.

We conclude that K2 should have known all the facts relevant to its right to intervene in July 2023. More than six months passed between the filing of the amended complaint in July 2023 and K2's attempted intervention in January 2024. The Claims Court noted that "five months . . . in a bid protest[] is an eternity." App'x 28

(alteration and omission in original) (internal quotations omitted).  We see no error in the Claims Court's determination that *Belton* factor one weighs against intervention.

B

Under the second *Belton* factor, we examine the prejudice to the existing parties if intervention is permitted compared to the prejudice to the would-be intervenor if intervention is denied.  *Belton*, 6 F.3d at 762.  The Claims Court determined that the balance of prejudices weighed against finding K2's motion timely.  We agree.

The prejudice to the existing parties is readily apparent.  To "unwind the Court of Federal Claims' incomplete and inaccurate factual findings" as K2 seeks, Appellant's Br. 28, the parties would be required to relitigate the factual issues.  The prejudice to the existing parties would be the time and expense of relitigating whether the alleged misrepresentation supported contract cancellation.

The prejudice to K2 is modest.  On appeal, K2 clarifies that it does not seek restoration of the cancelled contract but seeks to protect its reputational interests.  K2 argues that it may be required to disclose the Claims Court's findings when competing for future contracts.  But K2 identifies no statutory or regulatory provision that would exclude it from future competitions based on the Claims Court's finding.  To be sure, K2 has an interest in erasing the misrepresentation finding because of its potential adverse impact on the default termination proceedings.  But K2, as a nonparty in the Claims Court bid-protest action, would not be bound in future court proceedings by the Claims Court's finding of misrepresentation if K2 chooses to contest it.  *See Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008).  Under the circumstances, it appears that K2's interests in intervening in the bid-protest proceedings are not substantial.

We see no error in the Claims Court's determination that prejudice to the other parties outweighs any potential prejudice to K2.

C

Finally, under the third *Belton* factor, we look for any unusual circumstances that favor intervention. *Belton*, 6 F.3d at 762. K2 urges that this case presents such unusual circumstances, pointing to the parties' failure to promptly file public copies of the amended complaint and MJAR briefing and the USPS's failure to keep K2 informed of the case's evolution to include misrepresentation allegations.

These facts alone cannot justify K2's delay in light of its awareness, discussed above, that Global K9 had filed an amended complaint and MJAR in July 2023. We see no error in the Claims Court's determination that there were not unusual circumstances here favoring a timeliness finding.

It is also significant that K2's proposed intervention comes after the Claims Court's final decision on the injunction. A proposed intervention after the proceedings have otherwise concluded requires a "strong showing" and typically involves "unique situations." *See Smuck v. Hobson*, 408 F.2d 175, 181–82 (D.C. Cir. 1969) (internal quotations omitted); *see also McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970) ("[A]n attempt to intervene after final judgment is ordinarily looked upon with a jaundiced eye."); 7C Wright & Miller, Fed. Prac. & Proc. § 1916 (3d ed.). Intervention after judgment is particularly disfavored where, as here, "the applicant had a reasonable basis for knowing, before final judgment, that its interest was at risk." *Banco Popular de P.R. v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992); *see also Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 862 (6th Cir. 2000) (holding post-judgment intervention to be untimely where would-be intervenor "had numerous opportunities to

intervene . . . in order to safeguard its interests" prior to judgment); *Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1044 (2d Cir. 1988) (holding post-judgment intervention to be untimely where would-be intervenors "should certainly have been aware" prior to judgment that existing parties' interests were "not coterminous with their own").

Because we see no error in the Claims Court's conclusions with respect to each *Belton* factor, the Claims Court did not abuse its discretion in determining that K2's motion to intervene was not timely. As timeliness is the threshold issue for both as-of-right and permissive intervention, we need not reach the other requirements.

## III

K2 also argues that the Claims Court should have required that K2 be joined as a necessary or indispensable party once Global K9 alleged misrepresentation. *See* R. Ct. Fed. Cl. 19.[4] As relevant here, Rule 19 provides that a person must be joined if that person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." R. Ct. Fed. Cl. 19(a)(1)(B). To be sure, K2's ability to protect its interests was impaired by its absence from the proceeding.

---

[4] We have not previously decided whether to review Rule 19 determinations de novo or for abuse of discretion. *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318, 1324 (Fed. Cir. 2007). Though it is agreed that the question whether a requested intervention is timely is reviewed for abuse of discretion, *Belton*, 6 F.3d at 760, we conclude that K2 was not a necessary or indispensable party under either standard.

However, where a person does not avail of the opportunity to protect the person's own interests by joining the proceedings, this weighs against finding the person to be a necessary party. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*, 11 F.4th 12, 18 (1st Cir. 2021) (affirming district court's finding that a party was not necessary under Federal Rule 19 because the party was "well aware of [the] situation" but "never moved to intervene" (citation omitted)); *Fed. Ins. Co. v. Singing River Health Sys.*, 850 F.3d 187, 201 (5th Cir. 2017) (affirming district court's finding that parties were not necessary under Federal Rule 19 because the parties "have means to protect their interest" via intervention); *United States v. San Juan Bay Marina*, 239 F.3d 400, 407 (1st Cir. 2001) (affirming district court's finding that a party was not necessary under Federal Rule 19 where the party "deci[ded] to forgo intervention"). Having concluded that K2 could have intervened as of right in July 2023, we see no error in the Claims Court's determination that K2 was not a necessary party in light of "its decision to forgo intervention." *See San Juan Bay*, 239 F.3d at 407.

K2 does not seek to undo the contract cancellation, and we question also whether K2's alleged reputational interest was sufficient to render it a necessary party, even if it had acted in a timely fashion. K2 identifies no authority to support that proposition, and other circuits considering the question have held that reputational interests alone do not make a party necessary or indispensable. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1053 (9th Cir. 2015) ("We conclude that [the absent party's] reputational interests in this action are not legally protected under Rule 19."), *abrogated in part on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017); *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 670 (11th Cir. 1982) (holding absent party to be not necessary despite his interest in avoiding a finding that he breached fiduciary duty); *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d

496, 502 (7th Cir. 1980) (holding that impact on absent party's business reputation "is not a sufficient interest for finding the [absent party] indispensable under Rule 19").

K2 suggests it was a necessary party because the Claims Court's injunction was "against K2." Appellant's Br. 39. To be sure, an injunction generally may not bind a nonparty. *See* R. Ct. Fed. Cl. 65(d)(2); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394–95 (Fed. Cir. 1996); *see also Scott v. Donald*, 165 U.S. 107, 117 (1897). Thus, the absence of a person whom a plaintiff must enjoin to obtain complete relief may make that person a necessary party. *See Dawavendewa v. Salt River Project Agric. Imp. & Power Dist.*, 276 F.3d 1150, 1155–56 (9th Cir. 2002). But K2 is not bound by the Claims Court's injunction, nor did it need to be for the Claims Court to grant complete relief to Global K9. In its amended complaint, Global K9 sought to "[p]ermanently enjoin USPS from proceeding with performance on the clusters on which [Global K9] bid." App'x 512 (emphasis added). The Claims Court granted Global K9's requested injunction, and we do not read the injunction as extending to K2. App'x 95. K2 agrees that the injunction operates against the government, not against K2. Oral Arg. at 2:02–2:25. The Claims Court's injunction thus binds only the USPS. While K2's interests may have been affected by the injunction, the fact of the injunction alone did not render K2 a necessary party because of its forgone ability to join.

We conclude therefore that K2 did not have a right to intervene on the theory that it was a necessary party.

### CONCLUSION

The Claims Court did not abuse its discretion when it found K2's motion to intervene to be untimely and by not joining K2 as a necessary party. We affirm.

### **AFFIRMED**